**MT. HOOD STAGES, INC., doing business as Pacific Trailways, Plaintiff-Appellee,**

v.

**The GREYHOUND CORPORATION and Greyhound Lines, Inc., Defendants-Appellants.**

**No. 79-4071.**

United States Court of Appeals, Ninth Circuit.

Feb. 26, 1980.

Rehearing Denied April 23, 1980.

---

John R. Reese, McCuthen, Doyle, Brown & Enersen, San Francisco, Cal., on brief for defendants-appellants.

Eugene C. Crew, Broad, Khourie & Schulz, San Francisco, Cal. (argued), for plaintiff-appellee.

Before BROWNING, WRIGHT and KENNEDY, Circuit Judges.

BROWNING, Circuit Judge:

This antitrust case is before us for the third time. On the first appeal we affirmed a judgment for plaintiff on the merits, and held the suit not barred by limitations because the running of the statutory period had been tolled under 15 U.S.C. § 16(i). 555 F.2d 687 (9th Cir. 1977). On certiorari the Supreme Court held section 16(i) inapplicable, but remanded for consideration of whether the running of limitations had been tolled under equitable principles. 437 U.S. 322, 337 n. 21, 98 S.Ct. 2870, 2379 n. 21, 57 L.Ed.2d 239 (1978). We in turn remanded to the district court, 583 F.2d 469 (9th Cir. 1978). The district court held that running of the statute of limitations had been tolled during the pendency of related proceedings before the Interstate Commerce Commission. This appeal followed. We affirm.

## I.

Between 1947 and 1956 Greyhound acquired a number of bus companies whose routes together encircled the routes of Mt. Hood. On October 7, 1964, Mt. Hood filed a petition with the Commission asking that the acquisition proceedings be reopened, and the orders approving the acquisitions be modified. The United States petitioned to intervene in the Commission proceedings on December 14, 1964, and leave to intervene was subsequently granted. The Commission issued an opinion granting relief in April 1968.

This antitrust suit was filed in July 1968. Mt. Hood was awarded damages for the twenty year period from 1953 to 1973. The period of limitations is four years. 15 U.S.C. § 15b. The jury found Greyhound had fraudulently concealed the antitrust violation from 1953 to December 14, 1960. The trial court ruled that the statute of

limitations was tolled during that period. We affirmed this ruling on the prior appeal. 555 F.2d at 698–99. We also held on the prior appeal that under 15 U.S.C. § 16(i) the running of limitations was tolled on December 14, 1964 by the intervention of the United States in the Commission proceeding and remained suspended until the administrative proceeding was completed, after this suit was commenced. 555 F.2d at 699–701. Since the time between the period of fraudulent concealment and the government intervention did not exceed four years, the two tolling periods were "tacked" and Mt. Hood was allowed recovery for the full twenty year damage period extending from 1953 to 1973. 555 F.2d at 698 n. 26.

The Supreme Court reversed, holding that intervention by the United States in the Commission proceeding could not be treated as equivalent to institution by the United States of a civil proceeding to enforce the antitrust laws within the meaning of 15 U.S.C. § 16(i).

The question now before us is whether the pendency of the administrative proceeding initiated by Mt. Hood suspended the running of limitations on Mt. Hood's antitrust action on a basis other than section 16(i).[1] If it did, no part of the damage award is barred.[2]

■■■■ Whether the time limitation on filing suit under a federal statute is tolled during the pendency of a prior judicial or administrative proceeding depends upon whether permitting the subsequent litigation to proceed will further the purposes of Congress in creating the cause of action and in limiting the period for filing. *Burnett v. New York Central Railroad*, 380 U.S. 424, 426–27, 85 S.Ct. 1050, 1053, 13 L.Ed.2d 941 (1965); *American Pipe & Construction Co.*

*v. Utah*, 414 U.S. 538, 554–56, 94 S.Ct. 756, 766–67, 38 L.Ed.2d 713 (1974). We conclude that tolling the running of limitations serves the important federal interest in accommodating enforcement of the Sherman Act with enforcement of the Interstate Commerce Act, and is not inconsistent with the purposes of the Clayton Act's limitation period.

## II.

The governing principle is succinctly stated in *Burnett v. New York Central Railroad, supra*, 380 U.S. at 427, 85 S.Ct. at 1054:

> [T]he basic inquiry is whether congressional purpose is effectuated by tolling the statute of limitations in given circumstances.
>
> In order to determine congressional intent, we must examine the purposes and policies underlying the limitation provision, the Act itself, and the remedial scheme developed for the enforcement of the rights given by the Act.

## A.

We consider first whether tolling would serve the purpose and policies of the antitrust laws and the remedial scheme developed for the enforcement of the rights conferred by those laws.

Tolling the statutory period of limitations would serve the basic purpose of 15 U.S.C. §§ 15 and 26 to secure enforcement of the antitrust laws by encouraging persons injured to bring suit against antitrust violators. But this justification would be present in any private suit under the Act, and if no more were required to toll the running of

---

1. The issue of equitable tolling was raised for the first time in the district court prior to the first appeal but after trial. Greyhound argues that it would be unfair to consider the issue now because Greyhound was denied an opportunity to try it. We conclude the district court did not abuse its discretion in allowing the issue to be raised. Our reasons rest upon considerations relating to the merits and therefore will be stated after discussion of the merits. *See* III, below.

2. Mt. Hood knew or should have known of its claims on December 14, 1960. The administrative proceeding was initiated on October 7, 1964, less than four years from the date that the statute of limitations began to run on Mt. Hood's claims, and did not terminate until after this suit was filed.

the period of limitations the provision requiring suit to be filed within a limited period would be meaningless. However, tolling the limitations period pending Mt. Hood's resort to the ICC serves Congressional purpose in a much more precise sense. It contributes to a reasonable accommodation of the ICC's responsibility for furthering the national transportation policy with the responsibility of the courts to effectuate the national antitrust policy.

To effectuate the purposes of the Interstate Commerce Act, Section 5(11) of the Act, 49 U.S.C. § 5(11), expressly exempts from the antitrust laws certain carrier conduct that might otherwise violate those laws. Section 5(11) provides that when one carrier acquires another with the approval of the Commission, the carriers are

"relieved from the operation of the antitrust laws . . . insofar as may be necessary to enable them to carry into effect the transaction so approved or provided for in accordance with the terms and conditions, if any, imposed by the Commission, and to hold, maintain, and operate any properties and exercise any control or franchises acquired through such transaction."

The heart of Mt. Hood's antitrust claim is that Greyhound used the power gained through acquisition of encircling routes for the purpose and with the effect of eliminating Mt. Hood as a competitor. Prior to the acquisitions, Mt. Hood had cooperative traffic arrangements with the acquired companies and a through-bus arrangement with Greyhound. Mt. Hood opposed the acquisitions on the ground that these arrangements would be terminated if Greyhound gained control of the bus companies, and that Greyhound would route passengers around Mt. Hood's shorter routes. Greyhound responded by assuring the Commission that it was not the policy of Greyhound to route passengers over circuitous routes and by representing to the Commission that the cooperative arrangements would be continued. Relying upon Greyhound's representations the Commission approved the acquisitions. After encircling Mt. Hood, Greyhound, with the purpose of driving Mt. Hood out of business, did exactly what it represented to the Commission it would not do: Greyhound cancelled the through-bus connection, scheduled connecting services to preclude reasonable connection with Mt. Hood, caused ticket agents to direct traffic over Greyhound's longer routes, and interfered with the distribution of Mt. Hood's schedules and the quotation of its rates and services.

These activities alleged in Mt. Hood's antitrust complaint were directly related to and, indeed, dependent upon, the acquisitions approved by the Commission. A substantial question was therefore raised whether these activities were immunized from the antitrust laws by Section 5(11) of the Interstate Commerce Act.

If, as Greyhound insisted, the conduct underlying Mt. Hood's claim was necessary to carry the acquisitions into effect or to hold, maintain, or operate the routes acquired, the conduct was immune from the antitrust laws under § 5(11). If the practices were not necessary to these purposes there would be no antitrust immunity. *See* 555 F.2d at 688–95.

Whether Greyhound's transportation practices were necessary to carry the acquisitions into effect or hold, maintain or operate the acquired property raised "issues of fact not within the conventional experience of judges" and involved subject matter Congress has given the Commission jurisdiction to regulate. *Far East Conference v. United States,* 342 U.S. 570, 574–75, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952).[3] Moreover,

---

**3.** The Court in *Far East Conference v. United States,* 342 U.S. 570, 574–75, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952) said:

[I]n cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are

Mt. Hood's allegations, denied by Greyhound, that the Commission had approved the acquisitions in reliance upon Greyhound's false representations that it would not engage in these very practices, created a dispute only the Commission could resolve, and one that bore directly upon the integrity of the Commission's procedures.

These issues, critical to the question of immunity, were therefore within the primary jurisdiction of the Commission. Accordingly, the resolution of these issues by the Commission was required before a court could address the immunity question. *Chicago Mercantile Exchange v. Deaktor*, 414 U.S. 113, 94 S.Ct. 466, 38 L.Ed.2d 344 (1973); *Ricci v. Chicago Mercantile Exchange*, 409 U.S. 289, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973); *Carnation Co. v. Pacific Westbound Conference*, 383 U.S. 213, 86

S.Ct. 781, 15 L.Ed.2d 709 (1966); *Far East Conference v. United States, supra. United States Navigation Co. v. Cunard Steamship Co.*, 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408 (1932).

In *Ricci v. Chicago Mercantile Exchange, supra*, as in this case, the resolution of disputed questions of fact relating to transactions and practices Congress had placed within the regulatory jurisdiction of an administrative agency was important in determining whether antitrust immunity attached. The court concluded that because the agency's determination would "be of great help to the antitrust court in arriving at the essential accommodation between the antitrust and the regulatory regimes," 409 U.S. at 307, 93 S.Ct. at 583, the antitrust suit should be stayed until the administrative agency acted.[4] The considerations that

secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.

As we noted in our prior opinion:

Clearly there has been no conflict between the regulatory and antitrust regimes. On the contrary, they have accommodated and supplemented each other. The policies of both have been advanced. There has been initial resort to the Commission for an application of its expertise to the factual issues relevant to whether application of the antitrust laws would be incompatible with regulatory objectives, and the Commission has unqualifiedly indicated that it has not approved and continues to disapprove Greyhound's conduct under regulatory standards applied in light of antitrust principles. 555 F.2d at 692 (citation omitted).

4. Ricci claimed he had been deprived of his membership in the Chicago Mercantile Exchange by a transfer contrary to the rules of the Exchange and in violation of both the Commodity Exchange Act, 7 U.S.C. § 1 et seq., and the Sherman Act, 15 U.S.C. § 1. The court concluded that some membership restraints consistent with Exchange rules were sanctioned by the Commodity Exchange Act and immunized from the antitrust laws; and if transfer of Ricci's membership was contrary to Exchange rules, and thus not sanctioned by the Act, there would be no antitrust immunity. 409 U.S. at 303–04, 93 S.Ct. at 581. The Court noted that the Commodity Exchange Commis-

sion had jurisdiction to determine whether the transfer of Ricci's membership was consistent with Exchange Rules, and that prior agency determination of this dispute was likely to aid to in deciding whether there was antitrust immunity. Whether the transfer violated the rules and hence the Act raised issues "that should be dealt with in the first instance by those especially familiar with the customs and practices of the industry and of the unique marketplace involved in this case." 409 U.S. at 305, 93 S.Ct. at 582. The Court concluded that since these were matters "typically lying at the heart of an administrative agency's task and here they appear to be matters that Congress has placed within the jurisdiction of the Commodity Exchange Commission," the antitrust suit should be stayed until the Commission could act. 409 U.S. at 305–06, 93 S.Ct. at 582. The Court reasoned:

[I]f Ricci's complaint is sustained, the immunity issue will dissolve, whereas if it is rejected and the conduct of the Exchange [sanctioned] by a valid membership rule, the Court will be in a much better position to determine whether the antitrust action should go forward. Affording the opportunity for administrative action will "prepare the way, if the litigation should take its ultimate course, for a more informed and precise determination by the Court of the scope and meaning of the statute as applied to [these] particular circumstances."

409 U.S. at 306, 93 S.Ct. at 582, *quoting Federal Maritime Bd. v. Isbrandtsen Co.*, 356 U.S. 481, 498–99, 78 S.Ct. 851, 861–62, 2 L.Ed.2d 926 (1958). The Court continued:

We make no claim that the Commission has authority to decide either the question of

lead the Court in *Ricci* to require a determination by the administrative agency before the antitrust suit could proceed are even more clearly present in this case. In this case, as in *Ricci*, accommodating the purposes of both statutory schemes would have required that the antitrust suit, if filed, be stayed to abide the outcome of the Commission proceeding.

The present case illustrates the wisdom of this course. In the proceeding initiated by Mt. Hood, the Commission found that Greyhound had represented that it would continue the existing cooperative practices with Mt. Hood, that the Commission had relied upon the representations in approving the acquisitions, and that the representations were false. These findings were the basis for our subsequent holding that Greyhound's conduct was not immunized from antitrust liability by section 5(11). We said:

> Since the Commission approved the acquisitions in reliance upon Greyhound's commitment that the conduct underlying the antitrust complaint would not occur if the acquisitions were approved, it can hardly be argued that antitrust immunity for such conduct is "necessary" to enable Greyhound "to carry into effect the transaction so approved . . . and to hold, maintain, and operate any properties and exercise any control . . . acquired through such transaction."

555 F.2d 691.

Prior reference to the administrative agency not only aids the court in reaching a "more intelligent and sensitive judgment" as to antitrust immunity, *Ricci, supra*, 409 U.S. at 308, 93 S.Ct. at 583, it also reduces the risk of interference by the court in the performance by the agency of its adminis-

trative function. Congress's preference for Commission over judicial action in respect to matters within the regulatory jurisdiction of the Commission is reflected in Section 16 of the Clayton Act, 15 U.S.C. § 26. Section 26 prohibits a private antitrust plaintiff from obtaining injunctive relief against "any common carrier subject to the provisions of the [Interstate Commerce Commission Act] in respect [to] any matter subject to the regulation, supervision, or other jurisdiction of the Interstate Commerce Commission." Since the conduct constituting the antitrust violation in this case was subject to regulation by the Commission, Mt. Hood was barred by Section 26 from filing suit in district court for injunctive relief under the antitrust laws. Mt. Hood could secure an order restraining Greyhound's predatory practices only by petitioning the Commission, as it did.

If Mt. Hood had filed this antitrust suit, whether for damages or for an injunction, prior to the Commission determination that Greyhound's conduct was not necessary to carry the acquisitions into effect or to hold, maintain, or operate the routes acquired, the court would have been compelled to dismiss or stay the suit pending the necessary administrative determination. *United States v. Michigan National Corp.*, 419 U.S. 1, 4–6, 95 S.Ct. 10, 11–12, 42 L.Ed.2d 1 (1974); *Ricci v. Chicago Mercantile Exchange, supra*, 409 U.S. 289 at 302, 93 S.Ct. at 580, *Carnation Co. v. Pacific Westbound Conference, supra*, 383 U.S. at 222–24, 86 S.Ct. at 787; *Far East Conference v. United States, supra*, 342 U.S. at 576–77, 72 S.Ct. at 495. Accommodation of the purposes of the Clayton Act and the Interstate Commerce Act required that the antitrust suit be held

immunity as such or that any rule of the Exchange takes precedence over antitrust policies. Rather, we simply recognize that Congress has established a specialized agency that would determine either that a membership rule of the Exchange has been violated or that it has been followed. Either judgment would require determination of facts and the interpretation and application of the Act and Exchange rules. And either determination will be of great help to the antitrust court in arriving at the essential accommoda-

tion between the antitrust and the regulatory regimes: The problem disappears entirely if it is found that there has been a violation of the rules; on the other hand, if it is found that the Exchange has merely followed and enforced its own rules, the antitrust court will be in a position to make a more intelligent and sensitive judgment as to whether the antitrust laws will punish what an apparently valid rule of the Exchange permits. 409 U.S. at 307–08, 93 S.Ct. at 583.

in abeyance until the Commission ruled. Congressional purposes under the two statutory regimes would be served by tolling the statute of limitations during the Commission proceeding.

Unless Mt. Hood's failure to file this suit in advance of the administrative determination necessary to the maintenance of the antitrust suit frustrates some purpose of the Clayton Act's statute of limitations, Mt. Hood should not be penalized for proceeding in accordance with the integrated "remedial scheme developed" to accommodate the purposes of the antitrust laws and the Interstate Commerce Act. *See Burnett v. New York Central Railroad, supra,* 380 U.S. at 427, 85 S.Ct. at 1054.

### B.

The primary purpose of a statute of limitations is "to assure fairness to defendants." *Burnett v. New York Central Railroad, supra,* 380 U.S. at 428, 85 S.Ct. at 1054. "The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitations . . . ." *Order of Railroad Telegraphers v. Railway Express Agency, Inc.,* 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944). Limitations provisions are also designed to relieve the courts "of the burden of trying stale claims when a plaintiff has slept on his rights." *Burnett v. New York Central Railroad, supra,* 380 U.S. at 428, 85 S.Ct. at 1054. Neither purpose requires that Mt. Hood's antitrust claim be barred.

Even if Mt. Hood, as a protective measure, had filed this suit at the same time as it filed its petition to the ICC, Mt. Hood's antitrust claim would not have been tried any sooner than it was. As we have seen, the antitrust suit would have been stayed, or dismissed.[5] Since a Commission finding that Greyhound's conduct was necessary to carry the acquisitions into effect, or to hold,

maintain, or operate the acquired routes in all probability would have disposed of Mt. Hood's antitrust claim, it would have been poor judicial economy and a potential waste of the parties' resources to allow the suit to go forward even into the preliminary stages of discovery pending the outcome of the Commission proceeding. As the Supreme Court said in a related context, "Since [the protective suit] would remain quiescent until the administrative decision is rendered, the protective suit would be a sheer formality in any event—a procedural trap for the unwary and an additional complication for those who manage the dockets of the courts." *Crown Coat Front Co. v. United States,* 386 U.S. 503, 515, 87 S.Ct. 1177, 1184, 18 L.Ed.2d 256 (1967). *See also Northern Metal Co. v. United States,* 350 F.2d 833, 839 (3d Cir. 1965).

Mt. Hood has not slept on its rights; it has pursued its claims diligently. It petitioned the Commission for relief within four years after becoming aware of Greyhound's fraudulently concealed conduct. Promptly after the Commission made the determination that was prerequisite to the maintenance of this suit, Mt. Hood filed this action—long before judicial review of the administrative decision was completed. Mt. Hood's failure to file a protective suit that would have been stayed or dismissed was a technical omission that cannot be realistically equated with lack of diligence by Mt. Hood in pursuing its claims. "Regrettable as the long delay has been it has been caused by the exigencies of the contest, not by the neglect to proceed." *Order of Railroad Telegraphers v. Railway Express Agency, Inc., supra,* 321 U.S. at 349, 64 S.Ct. at 586.

The only possible purpose that could have been served by filing a protective suit within the statutory period was to give Greyhound specific notice of the antitrust claim within that period.[6] But Mt. Hood's claim

---

**5.** At the time Mt. Hood petitioned the Commission, it was the law of this circuit that a simultaneously filed antitrust suit would have been dismissed. *Carnation Co. v. Pacific Westbound Conference,* 336 F.2d 650, 667 & n. 32 (9th Cir. 1964), *rev'd,* 383 U.S. 213, 86 S.Ct. 781, 15

L.Ed.2d 709 (1966). *See Segal v. AT&T,* 606 F.2d 842, 845 (9th Cir. 1979).

**6.** Greyhound suggests that prior filing of the antitrust suit "enables the parties and the court

before the Commission provided Greyhound with notice of Mt. Hood's antitrust claim, in all but the most technical sense. As the Supreme Court and this court noted, 437 U.S. at 326, 98 S.Ct. at 2373; 555 F.2d at 691, both claims rested upon the same conduct: acquiring encircling routes, canceling the joint through-bus, and directing passengers over Greyhound's circuitous route rather than Mt. Hood's direct route, all with the purpose and effect of eliminating Mt. Hood as a competitor. It is not simply that the two claims arose out of the same set of facts; the administrative petition was so framed as to raise essentially the same contested issues as did the later antitrust suit. Only the emphasis and basis of relevance differed.

Whether Greyhound made false representations to the Commission, whether the Commission relied on these representations, the purpose of Greyhound's conduct, and the effect of that conduct on Mt. Hood were the essential issues of both the Commission proceeding and the antitrust suit. Whether Greyhound made false representations to the Commission was relevant in determining whether the running of limitations on the antitrust suit was tolled by fraudulent concealment, 555 F.2d at 698; the same issue was important to the jurisdiction of the Commission to reopen the acquisition proceedings, 104 M.C.C. 449 at 475 (1968), and to whether, on the merits, the Commission approval of the acquisitions was vitiated by reliance on the representations, 104 M.C.C. at 462. The Commission's finding that it had relied on Greyhound's false representations in approving the acquisitions was key to our determination that Greyhound's conduct was not immune from the antitrust laws as necessary to carry the acquisitions into effect, or to hold, maintain, or operate the acquired companies, 555 F.2d at 691; whether the Commission relied on Greyhound's misrepresentations was also the central issue in the Commission's determination that continuation of

the cooperative practices was a condition of the Commission's approval of the acquisitions, 104 M.C.C. at 461, 463.

The purpose behind Greyhound's cancellation of the joint through-bus and cessation of cooperative practices was crucial to the antitrust court's determination of whether Greyhound had unreasonably restrained trade and attempted to monopolize. Greyhound's motivation was litigated in the Commission proceeding as relevant to whether Greyhound's failure to live up to its representations was justified by changed conditions, as Greyhound contended, or was motivated by a desire to stifle competition and drive Mt. Hood out of business, as Mt. Hood alleged and as the Commission found, 104 M.C.C. at 461.

Finally, although Mt. Hood did not seek damages in the administrative proceeding, the issues of injury and loss were nonetheless litigated. To establish the destructive impact upon competitors of Greyhound's failure to adhere to its representations, and the inconsistency of Greyhound's conduct with national transportation policy, Mt. Hood claimed substantial pecuniary loss by reason of Greyhound's activities, 104 M.C.C. at 469, and adduced detailed evidence as to the injury and extent of the loss. 104 M.C.C. at 487–89, 494.

Greyhound has identified no factual issue in the antitrust proceeding not actually raised in the administrative proceeding. Indeed, in a pre-trial brief Greyhound characterized Mt. Hood's petition to the ICC as alleging "substantially everything which is alleged in its [antitrust] complaint." Greyhound had ample opportunity to prepare its defense before "evidence [had] been lost, memories [had] faded, and witnesses [had] disappeared." *Order of Railroad Telegraphers v. Railway Express Agency, Inc., supra,* 321 U.S. at 349, 64 S.Ct. at 586.

Greyhound argues, however, that it was entitled to receive within the period of limitations notice of the specific legal theory by

to formulate precisely the questions to be referred to and answered by the agency to assist the court." No such notice was required in this case. The Commission could not have decided

the questions before it without providing the court the assistance it did in resolving the immunity issue.

which Mt. Hood would later seek relief. Greyhound points out that even if the issues underlying the antitrust claim were all to be found in the administrative action, the consequences of an antitrust treble damage suit might be different from those of a petition to reopen the acquisition proceedings, and had it known of Mt. Hood's antitrust claims its strategy in the Commission proceeding also might have been different. Assuming the correctness of Greyhound's premise that notice of the claim itself was required, the government's petition for intervention in the administrative proceeding removed any reasonable basis for doubt that an antitrust suit raising common factual issues might follow.[7] The petition pointed out that "[b]ehind the immediate issues before the Commission are further issues of applicability of the antitrust laws." The petition noted that use of economic power gained from Commission approved acquisitions to isolate and destroy a competitor was not immune from the antitrust laws.

Greyhound argues that *Johnson v. Railway Express Agency Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) and *Electrical Workers Local 790 v. Robbins & Myers, Inc.*, 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976) "flatly preclude" tolling unless both proceedings involve precisely the same cause of action.

It is true that in *Burnett* and *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), in which tolling was allowed, the earlier and later proceedings were based on a single cause of action; and that in *Johnson* and *Electrical Workers*, in which tolling was denied, the two proceedings arose out of the same facts but were based upon different causes of action created by different statutes. It is also true that in *Johnson* the Supreme Court said that tolling in *American Pipe* and *Burnett* "depended heavily on the fact that [the prior] filings involved exactly the same cause of action subsequently asserted." 421 U.S. at 467, 95 S.Ct. at 1723. Lack of "complete identity" between the two causes of action was also noted as a reason for denying tolling in *Electrical Workers*, 429 U.S. at 238, n. 11, 97 S.Ct. at 448, n. 11.

But *American Pipe* and *Burnett* did not rest upon the identity of the causes of action, and *Johnson* and *Electrical Workers* do not turn upon the absence of such identity. As evidenced by the above quotations from the *Burnett* opinion, the result in *American Pipe* and *Burnett* rested upon the Court's conclusion that tolling served the purposes Congress sought to achieve by the substantive statutes and the limitations provisions involved in those cases. The contrary result in *Johnson* and *Electrical Workers* was based upon the Court's conclusion that in those cases the Congressional purpose would not be served by allowing the subsequent proceeding.

In *Johnson* the timely filing of a charge of employment discrimination under § 706 of Title VII of the Civil Rights Act of 1964, 78 Stat. 259, 42 U.S.C. § 2000e–5, was held

---

7. The government's petition to intervene reads in part:

The allegations of the petition of Mt. Hood Stages, Inc. make a serious charge: that Greyhound has been permitted through the series of acquisitions the Commission approved in these proceedings to extend its system in all directions around Mt. Hood; that Greyhound has now begun to route around Mt. Hood over all Greyhound routes traffic which it used to interchange with Mt. Hood or handle in through buses over shorter and quicker routes and to engage in numerous other acts and practices which as they are described in Mt. Hood's petition (pp. 8–9) have in the aggregate the appearance of a studied effort to force Mt. Hood out of business . . . . .

Behind the immediate issues before the Commission are further issues of applicability of the antitrust laws. The Commission's approvals of the acquisitions relieved Greyhound and its officials from accountability under these laws only to the extent necessary to put the acquisitions into effect. While actions taken to give effect to the acquisitions are completely immune, exercise of economic power the acquisitions conferred so as to isolate and destroy a competitor is not.

The petition was filed on December 14, 1964, one day before four years passed since Mt. Hood knew or should have known of its antitrust claims. *See* note 2, above. Thus Greyhound was given notice within the four year period required by the Clayton Act.

not to toll the running of the period of limitations borrowed from state law for the filing of suit on the same facts under Section 16 of the Civil Rights Act of 1870, 42 U.S.C. § 1981. The Court based its conclusion upon evidence in the legislative history of Title VII establishing that Congress intended the remedy under Title VII to be wholly independent of the remedy under Section 1981. Resort to Title VII procedures was not a prerequisite to a Section 1981 action; Congress had indicated no preference for a prior administrative proceeding.[8] The court also noted that tolling was supported in *American Pipe* and *Burnett*, by the existence in each case of "a substantial body of relevant federal procedural law to guide the decision to toll the limitations period, and significant underlying federal policy that would have conflicted with a decision not to suspend the running of the statute." 421 U.S. at 466, 95 S.Ct. at 1723.

Clearly, Congress did not intend a suit under the antitrust laws to be an independent remedial alternative to a petition to the Commission under § 10 of the Interstate Commerce Act in the circumstances involved here. No injunction could have issued and no damages could have been awarded under the antitrust laws unless and until the Commission exercised its primary jurisdiction under the Interstate Commerce Act. The doctrine of primary jurisdiction provides the "relevant federal procedural law to guide the decision to toll the limitations period". The significant federal policy underlying that doctrine—affording the Commission an opportunity to discharge its functions in the area assigned to it for regulation without interference by courts exercising related jurisdiction under the antitrust laws—"would have conflicted with a decision not to suspend the running" of limitations.

*Johnson* did not hold that an identical cause of action in both proceedings is prerequisite to tolling. Although the petitioner had argued in *Johnson* that the filing of the Title VII charge "gave the employer notice of the claim of discrimination and an opportunity to protect itself from loss of evidence, and surprise," the Court was "*not at all certain* that a Title VII charge affords the charged party the protection that petitioner[s] suggests." 421 U.S. at 467 n. 14, 95 S.Ct. at 1724 n. 14 (emphasis added). The court cited as an example *Tipler v. E. I. duPont deNemours & Co.*, 443 F.2d 125, 131 .(6th Cir. 1971), in which it was held that judicial proceedings under Title VII may encompass any charge "reasonably expected to grow out of" the prior complaint to EEOC. The Court continued: "Only [where] there is complete identity of the cause of action will the protections suggested by petitioner *necessarily* exist . . ." 421 U.S. at 468 n. 14, 95 S.Ct. at 1724 n. 14. (emphasis added). Thus *Johnson* does not preclude tolling even though the subsequent proceeding may not rest upon the identical cause of action where, as here, the prior administrative proceeding is prerequisite to the subsequent law suit and does in fact afford adequate notice of the issues upon which a defense should be prepared.

In *Electrical Workers* the Court concluded that the existence and utilization of grievance procedures under a collective bargaining contract did not toll the running of limitations on the filing with EEOC of a charge of employment discrimination under

---

**8.** The Court was satisfied "that Congress did not expect that a § 1981 court action usually would be resorted to only upon completion of the Title VII procedures . . . ." 421 U.S. at 461, 95 S.Ct. at 1720. The Court noted that "the filing of a Title VII charge and resort to Title VII's administrative machinery are not prerequisites for the institution of a § 1981 action." 421 U.S. at 460, 95 S.Ct. at 1720. The Court was "disinclined, in the face of congressional emphasis upon the existence and independence of the two remedies, to infer any preference for one over the other . . . ." 421 U.S. at 461, 95 S.Ct. at 1721. The Court concluded that "the fundamental answer to petitioner's [tolling argument] lies in the fact—presumably a happy one for the civil rights claimant—that Congress clearly has retained § 1981 as a remedy against private employment discrimination separate from and independent of the more elaborate and time-consuming procedures of Title VII." 421 U.S. at 465–66, 95 S.Ct. at 1723.

Title VII. The crux of the decision is the same as in *Johnson*: Congress intended the two remedies to be entirely distinct, neither dependent in any respect upon the commencement, progress, or outcome of the other. The court also quoted and applied the language of *Johnson* that sufficient notice would "necessarily exist" only where there was a complete identity of the causes of action. 429 U.S. at n. 11, 95 S.Ct. at n. 11. *Electrical Workers* does not bar tolling in this case because the administrative and antitrust proceedings were interdependent and the first afforded complete notice of the factual and legal issues involved in the second.[9]

Nor are we persuaded that we must reject the possibility of tolling in any circumstances because of the unadorned statement in *Carnation Co. v. Pacific Westbound Conference*, 383 U.S. 213, 223, 86 S.Ct. 781, 787, 15 L.Ed.2d 709 (1966), that limitations may run on a treble damage antitrust action during the pendency of an administrative proceeding related to the conduct underlying the antitrust claim. In *Carnation*, the plaintiff asserted that a rate-making agreement had not been approved by the Federal Maritime Commission, that the agreement was therefore not exempt from the antitrust laws under Section 15 of the Shipping Act, 46 U.S.C. § 814, and that the agreement constituted a *per se* violation of Section 1 of the Sherman Act. A Commission proceeding was underway to determine whether the challenged agreement existed, and, if so, its relationship with an earlier agreement that had been approved by the Commission. Defendants moved to dismiss the antitrust suit on the ground that the subject matter was within the exclusive jurisdiction of the Commission. The district court granted the motion, and this court affirmed on the ground that the resort to the exclusive preliminary jurisdiction of the Board was required. 336 F.2d

650, 664–67 (9th Cir. 1964). We expressly reserved the question whether an antitrust suit might follow the administrative determination. 336 F.2d at 667. On certiorari the Supreme Court treated the case as involving only "whether the Shipping Act . . . precludes the application of the antitrust laws to the shipping industry." 383 U.S. at 215, 86 S.Ct. at 783. The Court's opinion was devoted almost entirely to this question, which the court answered in the negative.

In a short discussion of the appropriate disposition of the pending antitrust treble damage action, the Court held this court had erred in dismissing the suit, and instead should have stayed it until the administrative proceeding was completed. The court distinguished the dismissal of the antitrust suit in *Far East Conference v. United States*, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952) on the ground that plaintiff in that case was seeking only injunctive relief from continuing conduct, and such a suit could be reinstituted if necessary when the administrative proceeding was concluded. The court then continued with the language upon which Greyhound relies: "But a treble-damage action for past conduct cannot be easily reinstituted at a later time. Such claims are subject to the Statute of Limitations and are likely to be barred by the time the Commission acts." 383 U.S. at 223, 86 S.Ct. at 787.

The Supreme Court's attention was directed to the distinction between a suit for injunctive relief against continuing conduct and a suit for damages for past conduct, and then only in respect to prejudice from dismissal. There was no issue of limitation or of tolling in the case. Neither limitations nor tolling was mentioned in the petition for certiorari, the opposition, or the briefs on the merits. The Supreme Court's

---

9. *Jackson v. Hayakawa*, 605 F.2d 1121 (9th Cir. 1979), is distinguishable for the same reasons. Plaintiff claimed that the period of limitations under 42 U.S.C. § 1983 was tolled by an informal administrative proceeding instituted by his department chairman. This court denied tolling, under both federal and state law, because

the informal administrative proceeding seeking reinstatement, instituted by someone other than the plaintiff, did not provide notice that the plaintiff would bring a damage action under § 1983 and because the two remedies were wholly independent.

statement on this subject was not supported by reasons or citation of authority. Moreover, it is not framed in absolute terms: the statement that a treble damage claim is "likely" to be barred does not preclude the possibility of tolling in an appropriate case.

We do not believe the Supreme Court intended its remark to prevent consideration, in a case where the question is squarely presented, of whether tolling the Clayton Act's statute of limitations while an administrative agency decides determinative issues within its primary jurisdiction should be recognized, where to do so would serve the purposes of Congress reflected in the substantive statutes and would not be inconsistent with the purposes of the limitations provision.

Greyhound's final argument on the merits is that tolling "would be inconsistent with the reasoning of the Supreme Court decision in this case." Greyhound's reference is to the Supreme Court's rejection of our holding that the government's intervention in the Commission proceeding was the "functional equivalent of a direct action" by the United States, 555 F.2d at 700. The Supreme Court noted that because the government might reverse its position in the course of the administrative proceeding it would be impossible to determine until the proceeding was concluded whether the government had in fact challenged the conduct as violative of the antitrust laws, and therefore whether the government's intervention would toll the statute. 437 U.S. at 336, 98 S.Ct. at 2378.

The Supreme Court concluded that an interpretation of section 16(i) that would produce such a result would be inconsistent with the purpose of the 1955 amendments to the Clayton Act to reduce the uncertainty and confusion resulting from the applications of varying state statutes of limitations. 437 U.S. at 335, 98 S.Ct. at 2378. But the Court's rejection of our proposed interpretation of section 16(i) does not mean that Congress intended to make equitable tolling inapplicable to the antitrust laws. One purpose of all statutes of limitations is to eliminate confusion as to the time suit must be filed; yet the doctrine of equitable tolling continues to co-exist with statutes of limitations. Equitable tolling was an established part of limitations law at the time of the 1955 amendments. *See, e. g., Order of Railroad Telegraphers v. Railway Express Agency Inc.*, 321 U.S. 342, 64 S.Ct. 582, 88 L.Ed. 788 (1944). Nothing in the legislative history suggests that Congress meant to dispense with application of this doctrine under the Clayton Act; it was applied under the Act in *American Pipe*. Moreover, the legislative history of the 1955 amendments reflects a Congressional understanding that the closely related rule that the running of limitations is tolled during periods of fraudulent concealment was to be left undisturbed by the amendments, *see* 101 Cong.Rec. 5129, 5130, 5133 (1955) (remarks of Congressman Celler), and the courts have continued to toll the Clayton Act's limitation provision during periods of fraudulent concealment despite the uncertainty that inevitably results. *See* 555 F.2d at 698 & n. 27.

The possibility that the Clayton Act might be tolled pending resort to an administrative agency for a preliminary determination of issues within its primary jurisdiction will not add greatly to the uncertainty as to when suit must be filed. The decision that limitations should be tolled and the extent of the tolling is not based upon an *ad hoc* reaction to the equities of a particular case. A well-developed body of law provides reasonably specific standards for determining when prior resort to an administrative agency will be required, and thus when limitations may be tolled. The duration of tolling is fixed by the duration of the administrative proceeding, and the claimant cannot delay the filing of suit indefinitely, since the statute of limitations is tolled only when the administrative proceeding is begun. The total period that may elapse from the time the cause of action accrues until suit is filed cannot exceed the period fixed by the statute—here, four years—plus the time during which the running of the period is tolled.

We conclude that purposes of the antitrust laws, the Interstate Commerce Act, and the Clayton Act's statute of limitations will be served by tolling the statute of limitations during Mt. Hood's resort to the ICC.

## III.

Mt. Hood first raised the theory that the statute of limitations was tolled under equitable principles in a post-trial brief. Greyhound argues that because it was denied a trial on the factual issues raised by the belatedly tendered theory, the district court erred in entertaining it.

■ The district court did not abuse its discretion in considering the tolling issue on its merits. The district court could reasonably conclude that Greyhound's claim of prejudice was hollow. In its reply brief in support of its motions for judgment notwithstanding the verdict and for a new trial, Greyhound answered Mt. Hood's equitable tolling claim on the merits without suggesting that it would be prejudiced by a decision on the existing record. Similarly, in its reply brief to this court on the first appeal, and in its briefs on petition for certiorari and on the merits in the Supreme Court, Greyhound again argued against equitable tolling on the merits with no suggestion that the record was inadequate. It was not until remand from the Supreme Court, more than five years after Mt. Hood first raised the theory of equitable tolling, that Greyhound claimed it would be prejudiced by a decision on the equitable tolling issue.

The trial judge allowed the parties to supplement the record to the extent necessary to resolve the merits of the equitable tolling issue. Greyhound produced affidavits of counsel that they were not aware during the proceedings before the Commission that Mt. Hood would later file an antitrust claim, and had they been aware, they would have followed a different strategy. In view of the specific references in the government's petition to intervene to Greyhound's antitrust liability if Mt. Hood's allegations proved true, however, counsel's claim of surprise was untenable.

Finally, Greyhound asserts that if the equitable tolling theory had been raised at trial, it would have proved that Mt. Hood's officers and attorneys did not in fact delay the filing of suit in reliance upon the doctrine of primary jurisdiction. The relevant question is whether the purposes of the antitrust laws, the limitations provision, and the Interstate Commerce Act would be served by tolling, not whether Mt. Hood invoked the administrative remedy with a subjective realization that they must do so before filing their antitrust claim. *See American Pipe & Construction Co., supra,* 414 U.S. at 551–52, 94 S.Ct. at 765.

## IV.

The District Court allowed interest on the whole judgment from the date the judgment was originally entered. Greyhound argues that interest should be awarded only from the date of the judgment on remand.

■ On the first appeal we affirmed the entire judgment. The Supreme Court review was limited to the tolling of the statute of limitations. Review by the Supreme Court did not affect the portion of the judgment reflecting damages incurred during the four years immediately preceding the date suit was filed. There was no limitations question as to this portion of the judgment. Since we affirmed this portion of the judgment, interest runs from the date the judgment was originally entered in the district court. Fed.R.App.P. 37; *Lew Wenzel & Co. v. London Litho Supply Co.,* 563 F.2d 1367 (9th Cir. 1977); *Perkins v. Standard Oil Co.,* 487 F.2d 672, 674 (9th Cir. 1973).[10]

■ Greyhound argues that interest cannot be awarded because neither the mandate of this court nor of the Supreme Court

---

10. *Perkins* also disposes of Greyhound's contention that interest is not allowable on a judgment for attorneys' fees. 487 F.2d at 675.

provided for an award of interest, *citing, Briggs v. Pennsylvania Railroad,* 334 U.S. 304, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948) and *United States v. Hougham,* 301 F.2d 133, 135 (9th Cir. 1962). In neither case was there a basis for recovery of the amount on which interest was sought until the appellate court reversed and remanded for the entry of the judgment. As we said in *Hougham,* it is consistent with the language of 28 U.S.C. § 1961 that "post-judgment interest should be calculated from the date of the entry of the judgment in which the money damages, upon which interest is to be computed, were in fact awarded . . ." 301 F.2d at 135. *See also Lew Wenzel & Co. v. London Litho Supply Co., supra.* If *Hysell v. Iowa Public Service Co.,* 559 F.2d 468, 476 (8th Cir. 1977) and *Riha v. IT&T Corp.,* 533 F.2d 1053 (8th Cir. 1976) are inconsistent with this view, we respectfully decline to follow them.

■ The dates from which interest should run on the portion of the judgment representing damages incurred during the tolling period is less clear. These damages were included in the original award, and we affirmed on the theory that tolling for the entire period was justified by fraudulent concealment of the claim, and, under section 16(i), by government intervention in the Commission proceedings. The Supreme Court did not agree that section 16(i) provided a basis for tolling limitations. The Court reversed and remanded for consideration of whether tolling was justified on equitable principles. The district court concluded that it was, and we affirm. The judgment remains the same—in the same amount, for the same damages incurred during the same period. The only change is the rationale for tolling for a portion of the period. The present rationale was urged upon the district court before the case went up on appeal, as well as upon this court and upon the Supreme Court. Had the district court, this court, or the Supreme Court rejected tolling under section 16(i) but sustained it on equitable grounds, the judgment would have been affirmed and interest awarded from the date judgment was originally entered. It is not apparent why

it should alter the case that the rationale was first adopted by the district court only on remand after the alternative rationale had been held invalid. The district court ruled correctly, therefore, in allowing interest on the whole judgment from the date of original entry.

*Affirmed.*