**PEOPLES NATURAL GAS COMPANY, A DIVISION OF INTERNORTH, INC., Petitioner,**

v.

**MINNESOTA PUBLIC UTILITIES COMMISSION, Respondent.**

**No. C6–83–1684.**

Court of Appeals of Minnesota.

Dec. 28, 1983.

---

Elmer P. Trousdale, David B. Potter, St. Paul, for petitioner.

---

Hubert H. Humphrey, III, Atty. Gen., Karl W. Sonneman, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by POPOVICH, C.J., and SEDGWICK and FOLEY, JJ., without oral argument.

## ORDER

POPOVICH, Chief Judge.

### Facts

Peoples Natural Gas Company (Peoples), petitioner, moves for:

1) a stay of the Public Utility Commission's orders of refund dated August 23, 1983 and October 24, 1983, pursuant to Minn.Stat. § 216B.53 (1982);

2) a stay of this proceeding appealing the refund orders.

### Procedural History

August 17, 1978: Issuance by the Minnesota Public Service Commission (PSC) of its Findings of Fact, Conclusions of Law and Order in *In the Matter of Certain Charges and Practices of Peoples Natural Gas Division of Northern Natural Gas Company, Imposed on Certain Large Power (Volume Gas) Customers,* Docket No. G–011/M–77–42 (hereinafter *In the Matter of Certain Charges*). The PSC found Peoples' rates unduly discriminatory within and between customer classes. With respect to its direct sale customers, Peoples was ordered to submit a uniform rate schedule for its similarly situated direct sale customers for consideration when Peoples filed a general rate change petition.

December 6, 1978: The PSC issued its Order after Reconsideration in *In the Matter of Certain Charges*. The August 17, 1978 Order was modified to require Peoples to submit the new rate schedules for all similarly situated direct sale customers within 45 days. Two considerations influenced the PSC's imposition of this deadline. First, a significant period of time had passed since the August 17, 1978 Order, and Peoples had not filed a general rate change petition. Second, winter had begun and natural gas demand would be higher.

January 19, 1979: Peoples submitted three alternative rate schedule proposals for eliminating the irregularities existing between the direct sale customers.

August 10, 1979: The PSC issued its Order Approving Rate Schedule in *In the Matter of Certain Charges*. The PSC evaluated the three proposals submitted by Peoples. One was selected and ordered into effect in 60 days.

October 11, 1979: The PSC issued its Order Granting Petition for Reconsideration in *In the Matter of Certain Charges*. Implementation of the new rate schedule adopted on August 10, 1979 was delayed. The contractual rates were to remain in effect until the Minnesota Supreme Court decided the PSC's authority to regulate Peoples' direct sale retail customers. (*Northern Natural Gas Company operating as Peoples Natural Gas Division v. Minnesota Public Service Commission, et al.,* Supreme Court Docket No. 50318.)

May 16, 1980: The Minnesota Supreme Court in *Northern Natural Gas Company v. Minnesota Public Service Commission,* 292 N.W.2d 759 (Minn.1980), decided that Peoples' direct sale retail operations qualified as a public utility and the PSC therefore had statutory authority to regulate these operations.

July 10, 1980: The PUC, the statutorily created successor of the PSC, issued its Final Order in *In the Matter of Certain Charges*. The PUC affirmed its earlier orders that the commission had jurisdiction over Peoples' retail direct sale operations. Additionally, the PUC determined that a general rate proceeding was the proper procedure for altering Peoples' direct sale rates. The PUC did not order Peoples' rates changed, but continued use of the contractual rates until Peoples instituted new rates under bond, pursuant to Minn.Stat. § 216B.16. Peoples was ordered, however, to submit a gener-

al rate case filing on or before August 21, 1980.

August 11, 1980: The PUC issued its Amended Final Order in *In the Matter of Certain Charges.* The PUC extended the deadline for filing a general rate case by 90 days, i.e. to on or before November 31, 1980.

December 1, 1980: Peoples filed a notice of change in rates for sales of gas with the PUC.

November 25, 1981: The PUC issued its Findings of Fact, Conclusions of Law and Order in *In the Matter of the Petition of Peoples Natural Gas Company, Division of InterNorth, Inc., for Authority to Increase Rates for Sales of Natural Gas in the State of Minnesota,* Docket No. G–011/GR–80–850 (hereinafter *In the Matter of the Petition of Peoples* ). Stating that *In the Matter of Certain Charges* played a large part in bringing the rate proceeding, the PUC adopted a demand/commodity rate for Peoples' direct sale taconite customers.

February 22, 1982: The PUC issued its Order Approving Rates and Directing Refund in *In the Matter of the Petition of Peoples.* Erie, Hibbing and Hanna had argued that they were entitled to refunds for gas volumes taken since March 1, 1981, the date that Peoples put rates under bond for general service customers. The three taconite customers had been charged their contract rate during the rate case proceeding, which exceeded the rate ultimately authorized for the companies. Erie, Hibbing and Hanna asserted that the language of the July 10, 1980 Order intended that March 1, 1981 would be the ending point of the contract rates.

The PUC disagreed and found that the contractual rates for the taconite companies were intended to remain legally in effect until Peoples instituted new rates under bond for the taconite class in the rate case. Peoples elected to continue to charge the contractual rate throughout the rate case rather than institute new rates under bond for the taconite class. The PUC stated that ordering a refund under these circumstances would amount to retroactive ratemaking, which is prohibited by Minn.Stat. § 216B.16, subd. 5 and Minn.Stat. § 216B.23.

March 15, 1982: Erie, Hibbing and Hanna petitioned for rehearing or reconsideration of the PUC's order of February 22, 1982.

May 18, 1982: The PUC denied Erie's, Hibbing's and Hanna's petition as untimely.

January 14, 1983: The St. Louis County District Court reversed the PUC's decision that Erie's, Hibbing's and Hanna's petitions were not timely filed and remanded for rehearing and reconsideration.

August 23, 1983: The PUC issued its Order on Remand after Reconsideration in *In the Matter of the Petition of Peoples.* The PUC reversed its February 22, 1982 decision; ordered Peoples to file a plan of refund for the three companies within 15 days of the service of the order; said that it had not adequately considered the history of the legal status of the direct sale rates in rendering its February 22, 1982 decision; and that Erie, Hibbing and Hanna should receive a refund of overcharges for the period from March 1, 1981 to February 9, 1982.

October 24, 1983 (First Order): The PUC issued its Order After Reconsideration in *In the Matter of the Petition of Peoples.* The PUC reaffirmed its August 23, 1983 Order, requiring the refund.

October 24, 1983 (Second Order): The PUC issued its Order Directing Refunds in *In the Matter of the Petition of Peoples,* ordering Peoples to immediately issue refund checks to Erie, Hibbing and Hanna for the period from March 1, 1981 to February 9, 1982, the period in which Peoples could have placed the rates under bond. The amount of each check was to be the difference between the contract rate paid and the rate eventually authorized by the PUC, plus interest at the average prime rate from March 1, 1981 to the date of the refund.

October 27, 1983: Writ of Certiorari to the Court of Appeals by Peoples.

November 4, 1983: The PUC issued the Notice And Order For Hearing in *In the Matter of an Investigation into a Revenue Deficiency for the Peoples Natural Gas Company, a Division of InterNorth, Inc.,* Docket No. G–011/CI–83–647.

December 9, 1983: The Hearing Examiner stayed the investigative proceeding until the court of appeals acts.

## ANALYSIS

■ 1. The authority to stay a PUC order is found in Minn.Stat. § 216B.53 (1982). The statute provides in part that "no Commission order relating to rates or rules shall be stayed or suspended absent a finding that great or irreparable damage would otherwise result to the party seeking the stay...." *Id.*

Peoples argues the uncertainty of recovering any refund paid to Erie, Hibbing and Hanna constitutes irreparable harm entitling Peoples to a stay. It is inconceivable to this court that if the PUC ordered a refund that it would not be recoverable from the companies should the refund order be declared unlawful.

■ 2. Peoples also moves for a stay of this appeal pending a decision in *In the Matter of an Investigation into a Revenue Deficiency for Peoples Natural Gas Company, a Division of InterNorth, Inc.,* Docket No. G–011/C1–83–647, contending that a favorable decision in that administrative proceeding would render this appeal moot.

That investigative proceeding was commenced to consider three issues: 1) whether a revenue deficiency resulted from the refund ordered by the Commission, 2) if a revenue deficiency did result, is Peoples entitled to recover it, and 3) if both questions are answered affirmatively, from whom should the revenue deficiency be collected?

This appeal, on the other hand, raises two issues: 1) did the PUC have the statutory authority to order the refund to the taconite companies, and 2) did the refund order deprive Peoples of its property without due process of law?

The investigative proceeding clearly does not address the issue of the PUC's refund authority. The PUC has already ruled that it has such authority in its orders of August 23, 1983 and October 24, 1983.

While not as obvious, the administrative proceeding does not address the due process issue either. The question in this appeal is the adequacy of the process provided. The administrative proceeding is not designed to address this issue.

Denying Peoples' stay is supported by two practical considerations: 1) if this court determines that the PUC lacked statutory authority to order the refund, there is no need for the investigative proceeding since there is no revenue deficiency if the refund order is voided, and 2) the Hearing Examiner stayed the investigative proceeding.

3. This court, like the parties, is interested in a final resolution of this long-simmering controversy.

## DECISION

Therefore it is ordered:

1) Both of appellant-petitioner's motions are denied.

2) Peoples is to issue the refunds ordered by the PUC's August 28, 1983 order upon the taconite companies' filing of a corporate undertaking with the Clerk of Appellate Courts.

3) This appeal is accelerated and the following schedule is established:

a) January 9, 1984: Appellant's brief due.

b) January 30, 1984: Respondent and Intervenor's briefs due.

c) February 6, 1984: Appellant's reply brief due.

d) February 13, 1984: Oral arguments en banc.