PEOPLES NATURAL GAS COMPANY, A DIVISION OF INTERNORTH, INC., Petitioner,

v.

MINNESOTA PUBLIC UTILITIES COMMISSION, Respondent.

No. C6–83–1684.

Court of Appeals of Minnesota.

April 24, 1984.

Elmer B. Trousdale, Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, Phillip Crowley, Omaha, Neb., for Peoples Natural Gas Co., a Div. of Inter-North, Inc., petitioner.

Hubert H. Humphrey, III, Atty. Gen., Karl Sonneman, Allen E. Giles, Sp. Asst. Attys. Gen., St. Paul, for Minnesota Public Utilities Com'n, respondent.

Paul W. Fox, Lawrence C. Acker, Washington, D.C., for intervenor The Hanna Mining Co.

Robert S. Lee, Minneapolis, for intervenors Erie Mining Co. and Hibbing Taconite Co.

**OPINION**

POPOVICH, Chief Judge.

This is an appeal by Peoples Natural Gas Company (Peoples) from the August 23, 1983 order of the Minnesota Public Utilities Commission (PUC). The order required Peoples to refund $829,917.17, plus interest and taxes, to Hanna Mining Company (Hanna), Erie Mining Company (Erie), and Hibbing Taconite Company (Hibbing), three of Peoples' large-volume customers. The refund was a rebate from the rates these

taconite companies paid during the 1980 Peoples' rate case. The amount of the refund was the difference between the rate actually paid and the rate ultimately approved by the PUC.

Peoples' request for reconsideration of the refund order was denied by the PUC on October 24, 1983. On appeal, Peoples challenges the authority of the PUC to order such a refund and alleges that the refund order was an unconstitutional taking without due process of law. We affirm.

## FACTS

Erie, Hibbing and Hanna are three taconite companies that purchase natural gas from Peoples. Historically the rates Peoples charged its various taconite customers depended on individually negotiated contracts. With the passage of the Minnesota Public Utility Act in 1974, however, the Minnesota Public Service Commission (PSC or Commission) was empowered to regulate the rates of public utilities. The utilities submitted their existing rate schedules to the commission and those rates became the lawful rates. Any changes or modification of the rates after January 1, 1975, however, required Commission approval.

In 1976 Erie learned that the rates Peoples charged various taconite companies varied substantially. Erie filed an informal and then formal complaint with the commission. An investigative proceeding was conducted and on August 17, 1978 the commission issued findings of fact, conclusions of law and order in *In the Matter of Certain Charges and Practices of Peoples Natural Gas Division of Northern Natural Gas Company, Imposed on Certain Large Power (Volume Gas) Customers,* Docket No. G–0–11/M–77–42 (Minn.P.S.C. August 17, 1978). (Erie complaint case.) The Commission declared the differing rates Peoples charged various taconite companies unlawful and stated:

1. (a) Because the Commission has jurisdiction to govern rates for Peoples direct-sale customers; (b) the present rates are discriminatory within and be-

tween customer classes; and (c) the demand rate is unreasonable during periods of curtailment; (d) Peoples is hereby ordered to submit a rate schedule to be considered when Peoples petitions the Commission for a general rate increase which will eliminate the inequities, including all demand charges during periods of curtailment.

*Id.*

A motion for reconsideration was made and on December 6, 1978 the Commission issued its order after reconsideration. The original order was modified to require Peoples to submit a new rate schedule for the taconite companies and other similarly situated direct sale customers.

Peoples submitted three alternative rate schedule proposals on January 19, 1979 and the PSC selected one of the proposed schedules on August 10, 1979.

The rate schedule selected should have become effective 60 days later. Implementation of the new rate schedule was stayed, however, pending the outcome of Peoples' appeal to the Minnesota Supreme Court. On appeal, Peoples claimed that the Commission lacked the authority to regulate Peoples' direct sales to the taconite companies. The Supreme Court disagreed. *See Northern Natural Gas Company v. Minnesota Public Service Commission,* 292 N.W.2d 759 (Minn.1980).

Following the Supreme Court's decision, the Public Utilities Commission (PUC)[1] issued a final order in the Erie complaint case. The order affirmed its previous decisions and required Peoples to file a general rate case by August 21, 1980. The order states:

By its Findings of Fact, Conclusions of Law and Order dated August 17, 1978, the Commission asserted that [sic] jurisdiction, found Peoples' direct-sale contract rates to be discriminatory, and ordered Peoples to submit new rates at the time of a general rate case filing.

\*      \*      \*      \*      \*      \*

---

1. The PUC is the statutorily created successor of the Public Service Commission.

Therefore, the Commission will order Peoples to submit a general rate case filing under M.S. § 216B.16 and in accordance with Minn.Reg. PUC 400 *et seq.* As part of that filing, Peoples shall propose a rate for its large volume direct-sale customers consistent with the class cost-of-service study ordered on March 4, 1980.

The Commission will not now order the rates for those large volume customers changed. Thus, the Commission's October 11, 1979, Order retaining Peoples' existing contractual rates will remain in effect until Peoples institutes new rates under bond pursuant to M.S. § 216B.16.

The amended final order extended the deadline for filing a rate case to November 31, 1980.

Peoples filed a general rate case petition on December 1, 1980. Ninety days later Peoples placed the rates proposed for its general service customers under bond pursuant to Minn.Stat. § 216B.16 (1980). The rates proposed for the taconite companies were not placed under bond. Peoples continued charging the taconite companies the contract rates previously adjudged discriminatory.

On November 25, 1981, the PUC issued its findings of fact, conclusions of law and order in *In the Matter of the Petition of Peoples Natural Gas Company, Division of InterNorth, Inc., for Authority to Increase Rates for Sales of Natural Gas in the State of Minnesota,* Docket No. G–011/GR–80–850 (Minn. P.U.C. November 25, 1981) (the rate case). Stating that the Erie complaint case played a large role in bringing about the rate case, the PUC adopted a demand-commodity rate for Peoples' direct sale taconite companies.

The PUC issued its order approving rates and directing refunds in the rate case on February 22, 1982. Even though the contract rates Erie, Hibbing and Hanna paid during the rate case exceeded the taconite rate ultimately authorized, the PUC denied the taconite companies' request for a refund. The PUC's order stated:

Erie and Hibbing, as well as Hanna, argued that they were entitled to refunds for gas volumes taken since March 1, 1981, the date that Peoples put rates under bond in this docket for general service customers. These three Taconite customers were charged at a contract rate during the rate case proceeding in excess of the rate approved herein for Taconite Service. In support of their argument, Erie and Hibbing cited the Commission's Order, *In the Matter of Certain Charges and Practices of Peoples Natural Gas Division of Northern Natural Gas Company, Imposed on Certain Large Power (Volume Gas) Customers,* Docket No. G–011/M–77–42 (July 10, 1980) at 3 as. follows.

\*  \*  \*  \*  \*  \*

The Commission will not now order the rates for those large volume customers changed. Thus, the Commission's October 11, 1979 Order retaining Peoples existing contractual rates will remain in effect *until Peoples institutes new rates under bond* pursuant to M.S. § 216B.16. (emphasis added)

\*  \*  \*  \*  \*  \*

The Commission finds that no refund is due to the taconite customer class in general nor to Erie, Hibbing, and Hanna specifically. \* \* \* The Commission concludes that the contractual rates for the taconite companies were intended to remain legally in effect until Peoples' instituted new rates under bond for the taconite class in the instant rate case. Peoples' elected to continue to charge the legal contractual rate throughout this case rather than institute new rates under bond for the taconite class. Therefore, no refund is legally required, nor permitted, for Erie, Hibbing and Hanna. To do otherwise under these circumstances would amount to retroactive ratemaking by the Commission which is prohibited by M.S. § 216B.16, Sub. 5 and M.S. § 216B.23.

The taconite companies' motions for reconsideration by the PUC were denied as untimely but the St. Louis County District

Court reversed this decision and remanded the case to the PUC for reconsideration. On August 23, 1983, the PUC issued its order on remand after reconsideration in the rate case. Stating that it had not adequately considered the history of the legal status of the taconite rates, the PUC reversed its decision regarding a refund for Erie, Hibbing and Hanna. Peoples was ordered to file a plan of refund for these three companies within 15 days of service of the order.

On October 24, 1983, the PUC issued an order directing Peoples to immediately issue refund checks to Erie, Hibbing and Hanna. The refund ordered covered the period from March 1, 1981 to February 9, 1982, the period for which Peoples could have placed the taconite rates under bond. The amount of each refund check was to be the difference between the contract rate paid and the rate ultimately authorized plus interest at the average prime rate. A petition and writ of certiorari were filed on October 27, 1983.

On November 4, 1983, the PUC commenced a new proceeding captioned *In the Matter of an Investigation into a Revenue Deficiency for the Peoples Natural Gas Company, a Division of InterNorth, Inc., Docket No. G–011/CI–83–647.* The purpose of the investigative proceeding is threefold: (1) to determine whether a revenue deficiency resulted from the refund ordered by the commission; (2) to decide whether Peoples is entitled to recover any deficiency that may have resulted; (3) to determine from whom any recoverable deficiency should be collected. On December 9, 1983, however, the hearing examiner stayed the proceeding pending the outcome of this appeal.

On December 19, 1983, this Court denied Peoples' motion to stay both the PUC refund order and this appeal. 342 N.W.2d 152. The refunds were paid when the taconite companies filed corporate undertakings.

## ISSUES

1. Whether the PUC has the power to order a refund of rates other than those placed under bond pursuant to Minn.Stat. § 216B.16?

2. Whether the PUC's refund order deprived Peoples of its property without due process of law?

## ANALYSIS

1. The statutory scheme enacted in Minnesota provides two mechanisms for changing utility rates. The first, Minn.Stat. § 216B.16 (1980) permits a utility to file a petition proposing new rates. After a public hearing, the PUC decides what rates to authorize.

The second mechanism for changing rates, Minn.Stat. § 216B.23 (1980) is initiated by a party other than the utility. Under this statutory provision:

> Whenever upon an investigation made under the provisions of Laws 1974, Chapter 429, the commission shall find rates, tolls, charges, schedules or joint rates to be unjust, unreasonable, insufficient or unjustly discriminatory or preferential or otherwise unreasonable or unlawful, the commission shall determine and by order fix reasonable rates, tolls, charges, schedules or joint rates to be imposed, observed and followed in the future in lieu of those found to be unreasonable or unlawful.

Minn.Stat. § 216B.23, subd. 1 (1980).

In this matter, Erie complained that Peoples's taconite rates were discriminatory. After an investigation, the PSC determined the rates were unduly discriminatory and ordered Peoples to submit a uniform rate. On August 10, 1979 the PSC went so far as to adopt a new uniform rate for Peoples' taconite customers. Implementation of the new rate was delayed, however, due to Peoples' challenge to the PSC's jurisdiction and Peoples' request for an extension for filing a rate case petition.

When Peoples finally filed a rate case petition, a new uniform rate for its taconite customers was proposed. Unlike the rates for its general service customers, however, Peoples did not place the new taconite rate

under bond. Instead, Peoples charged the taconite companies the discriminatory rate throughout the thirteen month rate proceeding.

Counsel for Peoples admitted that the utility's revenues would have been identical had Peoples charged the proposed rate during the rate case. The difference would have been the amount each taconite customer was charged. Erie's, Hibbing's and Hanna's bills would have been less, other taconite companies' bills would have been more. Peoples' decision not to charge the proposed rate was a conscious choice to continue its discriminatory rate practices.

Peoples' success in circumventing the clear intention of the PSC and PUC orders does not make the refund order retroactive. For over two years the PSC and PUC pushed Peoples to file a rate petition and correct the discriminatory taconite rates. As the PUC stated in the August 23, 1983 refund order:

> Peoples's refusal to place the uniform rate into effect on March 1, 1981, when ordered, had the practical effect of simply extending the period in which the unlawfully discriminatory rates were to be collected from Erie, Hibbing, and Hanna. Peoples's claim that the Commission cannot now remedy over two years of illegal rates is disingenuous. The repeated failure of Peoples to replace those illegal rates cannot stand as a bar to the correction of that failure.

Peoples' argument that the PUC lacked statutory authority to order the refund is based primarily on two cases. The first is *Great Northern Railway Company v. Public Service Commission*, 284 Minn. 217, 169 N.W.2d 732 (1969) where the court stated:

> It is elementary that the Commission, being a creature of statute, has only those powers given to it by the legislature. *Backus-Brooks Co. v. N.P. Ry. Co.* (8 Cir.), 21 F.2d 4, 19, where the court said:
>
> "It is well settled that the powers of a state Commission are special and limited, and they can exercise only such

authority as is legally conferred by express provisions of law, or such as is by fair implication and intendment incident ·to and included in the authority expressly conferred for the purpose of carrying out and accomplishing the objects for which the Commission was created, and that any reasonable doubt of the existence of any particular power in the Commission should be resolved against the exercise of such power."

*Id.* at 220–21, 169 N.W.2d at 735.

■ Under Minn.Stat. § 216B.23 (1980) the PUC not only has the right but is under a duty to change rates that are unduly discriminatory. Peoples' taconite rates were adjudged unduly discriminatory and ordered changed. Peoples deliberately circumvented this order and delayed implementing a uniform rate as long as possible. Under these circumstances, the authority to order the refund "is by fair implication and intendment incident to and included in the authority expressly conferred for the purpose of carrying out and accomplishing the objects for which the Commission was created." *Great Northern Railway Company*, 284 Minn. at 220–221, 169 N.W.2d at 735.

Peoples' reliance on *T.I.M.E. v. United States*, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959) is also misplaced. In *T.I.M.E.* two motor carriers performed shipping services for the U.S. government. The carriers charged the government the lawful rate, the rate listed on the tariff filed with the Interstate Commerce Commission. The government sought to challenge the reasonableness of the lawful rate in court after the services had been rendered.

Peoples' taconite rate was declared unduly discriminatory long before Peoples filed their rate case petition. Peoples knew the rate was supposed to be changed and could have implemented the proposed rate during the rate case without adversely affecting its revenue intake. Additionally, unlike *T.I.M.E.*, this case does not involve creating a private cause of action from a

regulatory statute. Rather the agency charged with enforcement of the statutory scheme has carried out its statutory duty.

2. Peoples also claims that the refund ordered deprived the utility of its property without due process of law. Peoples maintains that it has a protectible property interest in the revenue requirement approved by the PUC in Peoples' rate case. Whether a utility has a protectible property interest in its approved revenue requirement, however, is not the issue before this Court. Rather the issue is whether Peoples has a protectible property interest in unreasonably discriminatory rates collected from Erie, Hibbing and Hanna. We hold it does not.

Minn.Stat. § 216B.07 (1980) provides that:

> No public utility shall, as to rates or service, make or grant any unreasonable preference or advantage to any person or subject any person to any unreasonable prejudice or disadvantage.

*Id.* Once Peoples' taconite rate was adjudged unduly discriminatory, it was in violation of this statutory prohibition. To hold that Peoples received a protectible property interest in these discriminatory rates would be to read section 216B.07 out of existence. This we cannot and will not do.

This does not mean that Peoples may not sustain a revenue deficiency from the refund, however. That question is separate and distinct from the question of a protectible property interest. The PUC has already seen fit to commence an investigatory proceeding which will include a determination whether a revenue deficiency resulted from the refund. Now that this appeal is concluded, that investigation can proceed.

### DECISION

The PUC had authority to order a refund of rates it had previously adjudged unduly discriminatory and ordered changed. The refund did not deprive Peoples of property in which it had a protectible interest since it was not entitled to the property to begin with.

The PUC's orders of August 23, 1983 and October 24, 1983 are affirmed in all respects. Peoples' motion for reconsideration of this Court's order of December 19, 1983, denying the stay and ordering the refunds is denied.

Affirmed.