The HANNA MINING COMPANY,
Petitioner, Appellant,

v.

INTERNORTH, INC., Respondent.

No. C1-85-1306.

Court of Appeals of Minnesota.

Jan. 7, 1986.

Review Denied March 14, 1986.

Lawrence G. Acker, LeBoeuf, Lamb, Leiby & MacRae, Washington, D.C., Richard R. Burns, Hanft, Fride, O'Brien, Harries, Swelbar & Burns, Duluth, for appellant, Hanna Mining Co., petitioner.

Elmer B. Trousdale, Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, for respondent, InterNorth, Inc.

Heard, considered and decided by POPOVICH, C.J., and RANDALL, and CRIPPEN, JJ.

RANDALL, Judge.

This case involves damages resulting from discriminatory rates charged by respondent gas supplier of appellant. The trial court dismissed many of appellant's claims by partial summary judgment, finding respective statutes of limitation had run. Appellant claims the trial court erred in granting respondent partial summary judgment because the statutes of limitation were tolled by (1) respondent's fraudulent concealment of the discriminatory nature of rates charged appellant, and (2) administrative proceedings and appeals therefrom that determine an administrative commission's jurisdiction in finding that a case was a public utility matter and that the rate charges were unlawfully discriminatory. We affirm.

## FACTS

Appellant Hanna Mining Company was and is the managing agent for two taconite mines and processing facilities: Butler Taconite Project (Butler) near Nashwauk, Minnesota and National Steel Pellet Plant (National) near Keewatin, Minnesota. Respondent InterNorth, Inc. is a supplier of natural gas in Minnesota. When appellant's claims arose, InterNorth was conducting its business as Northern Natural Gas Company (Northern) and its operating division Peoples Natural Gas Company (Peoples).

On April 27, 1965, Hanna contracted with Northern for supply of gas to Butler. A similar contract regarding National was signed on May 5, 1966. Letter amendments to those contracts included "most favored nations" clauses. Peoples agreed thereby to promptly notify Hanna of any Peoples' agreement with a similarly situated customer which allowed a more favorable rate, and to permit Hanna at such point to substitute equivalent terms in its existing contracts or to exchange for the more favorable agreement in its entirety.

Hanna renegotiated its contracts in 1976. Peoples allegedly told Hanna it must agree to increased rates before the contracts would be extended and that the identical rates would be demanded of all similarly situated customers. On April 13, 1976, amendments were executed setting the higher rates to become effective September 27, 1976.

On November 2, 1976, Erie Mining Company (Erie) a Northern customer, filed an informal complaint with the Minnesota Public Services Commission (MPSC n.k.a. Minnesota Public Utilities Commission) regarding curtailment of its gas service. Erie claimed it was wrongfully charged demand charges whereas similarly situated customers were not. On January 21, 1977, the MPSC issued an order to show cause why Peoples should not implement a uniform curtailment plan and alter its demand charge collections during curtailment.

On February 1, 1977, Erie filed a formal complaint with the MPSC, complaining that, in addition to curtailment matters, Peoples failed to file rate changes with the MPSC. Hanna and other similarly situated taconite companies intervened. Hearings began on April 21, 1977. The first recorded appearance by Hanna was on the final

day of hearings on July 25, 1977. During the April hearings, Lloyd Sharp of respondent InterNorth stated, when examined, that respondent was charging its customers differing rates. Erie thereafter amended its complaint to include a claim of rate discrimination.

On November 23, 1977, the hearing examiner issued his report finding Peoples' rates were discriminatory. A copy of the report was mailed to Hanna.

On August 17, 1978, the MPSC issued an order requiring Peoples to submit a rate schedule when petitioning for a general rate increase which would eliminate inequities in existing rates that "are discriminatory within and between customer classes." The Commission concluded it had jurisdiction over the matter and stated Peoples had violated Minn.Stat. § 216B.16 (Supp.1977) by putting contract amendments into effect without MPSC approval.

Northern moved for reconsideration. The MPSC denied that motion on December 6, 1978, and ordered Northern to submit new rate schedules for its large volume direct-sale customers. Northern appealed the MPSC order in Ramsey County District Court which affirmed the Commission on June 25, 1979. Meanwhile, Northern submitted a volumetric rate proposal for the designated customers and on August 10, 1979, the MPSC approved and ordered implementation within 60 days. On October 11, 1979, the Commission postponed the effective date of that order pending Northern's appeal to the Minnesota Supreme Court regarding the MPSC's jurisdiction. The supreme court affirmed on May 16, 1980. *See Northern Natural Gas Co. v. Minnesota Public Service Commission,* 292 N.W.2d 759 (Minn.1980).

On July 10, 1980, the Commission (now the Minnesota Public Utilities Commission or MPUC) issued a final order stating:

No general rate case has yet been filed by Peoples with the Commission. The concerns felt nearly two years ago continue to press the Commission. Without a thorough review of Peoples' rates, costs, and revenues, the Commission cannot fulfill its statutory obligation to ensure that rates charged by Peoples are just and reasonable. M.S. § 216B.03 requires that, "Rates shall not be unreasonably preferential, unreasonably prejudicial or discriminatory, but shall be sufficient, equitable and consistent in application to a class of consumers." The Commission has already found, in its August 17, 1978, Order, that certain rates are discriminatory. The reasonableness of other rates is not ascertainable to the Commission at this time.

The MPUC ordered a general rate case and decided:

The Commission will not now order the rates for those large volume customers changed. Thus, the Commission's October 11, 1979, Order retaining Peoples' existing contractual rates will remain in effect until Peoples institutes new rates under bond pursuant to M.S. § 216B.16.

On November 30, 1980, Peoples filed its proposed uniform rate with the MPUC agreeing:

If the proposed rate changes are suspended by the Commission, Peoples intends to put the suspended rates into effect on March 1, 1981, conditioned upon refund, under bond or other arrangement approved by the Commission. A corporate undertaking to make such refunds is filed herewith for Commission approval. Upon approval of said agreement and undertaking, Peoples shall keep the necessary records, make monthly reports to the Commission, and refund to customers or credit to customer accounts within ninety (90) days of the Commission's order any increase determined to be unreasonable, with interest, as prescribed by PSC 401B(2).

On November 25, 1981, the MPUC issued its findings of fact, conclusions of law, and order. Peoples implemented the new rates on February 9, 1982. On February 22, 1982, after permitting the parties to file comments, the Commission approved and slightly modified Peoples' proposed tariffs and refund plan. The taconite companies' motion for reconsideration was denied.

They appealed to St. Louis County District Court which remanded for reconsideration on January 14, 1983.

On August 23, 1983, the MPUC issued its order on remand after reconsideration and stated:

The Commission agrees * * * that the clear intent of the July 10, 1980 Final Order in *Erie Complaint* * * * was to have uniform Taconite rates placed into effect under bond subject to refund in conjunction with the general rate case that Peoples was ordered to file. Peoples could have, and should have, done so. Peoples filed a uniform Taconite rate with the rate case but chose not to make the tariff effective until after Commission review in the rate case. However, Commission approval of the uniform rate was not a prerequisite to placing the rate into effect under bond on March 1, 1981 along with the other rates. The fact that Peoples chose not to put uniform Taconite rates into effect under bond does not relieve the Company of the responsibility to refund overcharges of illegal, discriminatory rates.

The Commission ordered Peoples to file a refund plan regarding all monies collected in excess of the authorized rates between March 1, 1981, and February 9, 1982.

Peoples appealed the MPUC's order to this court, which affirmed the MPUC's implied authority to order a window period refund. *See Peoples Natural Gas Co. v. Minnesota Public Utilities Commission,* 348 N.W.2d 347 (Minn.Ct.App.1984). Peoples further appealed to the Minnesota Supreme Court.

Prior to release of the supreme court's decision, appellant Hanna on March 8, 1985, sued respondent InterNorth in St. Louis County District Court for damages for breach of contract and breach of duty under two tort claims. The breach of contract claim alleged respondent materially breached the contracts regarding Butler and National causing $2,257,616.97 in damages by failing

(a) to inform Hanna that other similarly situated customers were being charged

less for service; and (b) to substitute the lowest rate offered to any similarly situated customer for the rates actually charged to plaintiff from September 27, 1976 to February 28, 1981, inclusive.

The first tort claim alleged respondent breached a common law duty to treat similarly situated customers in a nondiscriminatory fashion causing $2,257,616.97 in damages by

charging different and higher rates to Hanna than were charged to other similarly situated customers for sales of natural gas between September 27, 1976 and February 28, 1981, inclusive.

The second tort claim alleged respondent as a public utility breached its statutory duty under Minn.Stat. § 216B.07 not to "grant any unreasonable preference or advantage to any person or subject any person to any unreasonable prejudice or disadvantage." Appellant alleged $3,128,873.90 in damages because:

Peoples violated this duty by charging different and higher rates to Hanna than were charged to other similarly situated customers between January 1, 1975 * * and February 28, 1981, inclusive.

On March 29, 1985, respondent moved to dismiss and for summary judgment on grounds the breach of contract claim was barred by the four year statute of limitations in Minn.Stat. § 336.2–725(1) and the breach of duty claims were barred in part by the six year statute of limitations in Minn.Stat. § 541.05, subd. 1.

On June 14, 1985, the trial court granted respondent's motions regarding appellant's breach of contract and breach of duty claims with respect to those claims for damages incurred before March 8, 1979.

On June 21, 1985, the Minnesota Supreme Court filed its decision regarding the MPUC's authority to order refund of excess charges between March 1, 1981, and February 9, 1982. The supreme court held the Commission was without such authority and reversed this court. *See Peoples Natural Gas Co. v. Minnesota Public*

*Utilities Commission,* 369 N.W.2d 530 (Minn.1985).

On July 15, 1985, appellant filed with this court a petition for discretionary review of the trial court's order granting partial summary judgment. Upon showing a compelling reason existed, appellant's petition was granted. Minn.R.Civ.App.P. 105.01.

## ISSUES

1. Did the trial court err in not tolling the statute of limitations based on the doctrine of fraudulent concealment?

2. Did the trial court err in not tolling the statute of limitations based on the requisite completion of administrative proceedings?

## ANALYSIS

### I.

### *Fraudulent Concealment*

Summary judgment may be granted if "there is no genuine issue as to any material fact and * * * either party is entitled to a judgment as a matter of law." Minn.R. Civ.P. 56.03.

> On appeal from a summary judgment it is the function of this court only to determine (1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of the law.

*Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979).

Appellant claims the four-year statute of limitations applicable to its contract claim was tolled by respondent's fraudulent concealment of its violation of "most favored nations" clauses in the letter amendments to contracts regarding gas supply to appellant's Butler and National plants.

> The party claiming fraudulent concealment has the burden of showing that the concealment could not have been discovered sooner by reasonable diligence on his part and was not the result of his own negligence.

*Wild v. Rarig,* 302 Minn. 419, 450–51, 234 N.W.2d 775, 795 (1975).

In the trial court's memorandum supporting its grant of partial summary judgment, the trial court stated:

> In the instant case the only possible concealment is defendant failing to inform Hanna it was charging others lower rates. Defendant was under a duty under the most favored nation clause to inform the plaintiff of preferences. However, even if defendant's silence was fraudulent concealment and the statute of limitations was tolled, plaintiff had knowledge of the preferred rates by 1977. This was more than six years before the Complaint was served, so something more is needed to toll the statutes of limitations.

■ Evidence supports the trial court's conclusion. Appellant intervened in the Erie complaint case in 1977. At that hearing, testimony openly revealed the discriminatory nature of respondent's rates. Appellant also received the hearing examiner's report in 1977 which stated respondent's rates were discriminatory. Possessing sufficient knowledge, appellant should have preserved its claim by filing suit at that time. *See id.* at 451, 234 N.W.2d at 795.

### II.

### *Administrative Necessity*

Appellant claims the six-year statute of limitations in Minn.Stat. § 541.05, subd. 1, applicable to its tort claims, was tolled until the termination of requisite administrative proceedings. For appellant's claims to be preserved in their entirety, tolling must have extended until March 8, 1979.

Appellant claims tolling should have occurred because it was unable to bring suit for refund under breach of duty claims until administrative proceedings determined:

(1) whether the rates charged appellant by respondent were unlawfully discriminatory; and

(2) whether the overcharging was a public utility matter triggering application of

Minn.Stat. § 216B.07 prohibiting unreasonable rate preference.

Appellant bases its claim on the doctrine of primary jurisdiction.

The judicially created doctrine of primary jurisdiction is concerned with the orderly and sensible coordination of the work of agencies and courts. It requires that—

"* * * in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created * * * for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure." *Far East Conference v. United States,* 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576, 582 (1952).

See, generally, 3 Davis, Administrative Law, § 19.01.

*State, Pollution Control Agency v. United States Steel Corporation,* 307 Minn. 374, 380, 240 N.W.2d 316, 319–20 (1976).

Respondent argues in the absence of express statutory tolling of the statute of limitations, equitable tolling applies and is invoked only if bringing suit was prevented by paramount authority or by invincible necessity. *Knipple v. Lipke,* 211 Minn. 238, 300 N.W. 620 (1941). Respondent asserts appellant could have filed its claims and, if necessary, the district court action could have been stayed pending conclusion of the administrative proceedings.

Appellant has failed to demonstrate the paramount authority of an agency determination of respondent's status as a public utility. The trial court concluded, "Any Court could determine whether [respondent] was a public utility." The Minnesota Supreme Court on appeal of the MPSC's Erie complaint order independently determined respondent's status. *See Northern Natural Gas Co.,* 292 N.W.2d 759. We agree that determination need not have been first made by the Commission.

To support its conclusion that the determination of nondiscriminatory rates was not a prerequisite to trial, the trial court in its incorporated memorandum cited *McClellan v. Montana-Dakota Utilities Co.,* 204 F.2d 166 (8th Cir.), *cert. denied,* 346 U.S. 825, 74 S.Ct. 43, 98 L.Ed. 350 (1953). That case involved a claim for lost profits and lost property rights resulting from plaintiff's inability to transport its natural gas through defendant's pipes because defendant imposed unreasonable rates. The *McClellan* court held plaintiff could not recover under common law fraud because the statute of limitations had run. Tolling did not occur because the administrative proceeding did not prescribe a reasonable rate for the period involved. The Commission prescribed instead a new rate and determined the previous rates were unjust, unreasonable, and discriminatory.

Appellant relies on *Mt. Hood Stages, Inc. v. Greyhound Corp.,* 616 F.2d 394 (9th Cir.), *cert. denied,* 449 U.S. 831, 101 S.Ct. 99, 66 L.Ed.2d 36 (1980). There plaintiff failed to file an antitrust suit during the pendency of related proceedings before the Interstate Commerce Commission and the antitrust statute of limitations ran. The *Mt. Hood* court held the statute of limitations was tolled until the conclusion of the administrative proceedings. There, however,

although Mt. Hood did not seek damages in the administrative proceeding, the issues of injury and loss were nonetheless litigated.

*Id.* at 401.

Here, the MPSC did not prescribe a reasonable rate for the period involved. To do so would have constituted impermissible

retroactive ratemaking. The Commission ordered instead a general rate case to establish reasonable rates for future imposition. The administrative proceeding did not determine appellant's injury or loss.

Tolling principles are a creature of equity and the right to a tolling of the statute of limitations accrues only when the interests of justice require it.

*Bartlett v. Miller and Schroeder Municipals, Inc.*, 355 N.W.2d 435, 439 (Minn.Ct. App.1984) (citation omitted).

█ Although the practice of intentional overcharging is disturbing, wrong, and cannot be condoned, the trial court did not err in granting respondent's motions for summary judgment based on applicable statute of limitations. Appellant should have filed its action prior to conclusion of the administrative proceedings. Appellant should have preserved its claims by bringing suit when it became aware of its cause of action in 1977.

## DECISION

The trial court properly granted summary judgment and dismissed those contract and tort claims barred by applicable statutes of limitation.

Affirmed.

CRIPPEN, Judge, dissenting.

The statute of limitations should have been tolled for the duration of administrative proceedings. The majority decision depends upon a constrained view of the doctrine of tolling, and I respectfully dissent.

In *Mt. Hood*, discussed in the majority opinion, "issues of injury and loss" were litigated in administrative proceedings, and this tolled the statute of limitations for judicial action. It is true here that the amount of prior losses were not determined in the Peoples' rate case opened by the Minnesota Public Utilities Commission (MPUC) in 1980.

Nevertheless, the general rate case was specifically designed to determine if Peoples used rates that were unreasonably preferential. The MPUC said it would de-

cide whether discriminatory rates included some in addition to those found to be discriminatory in 1978.

Appellant Hanna contends that its judicial proceedings were inappropriate until administrative decisions were finally made as to which rates were preferential. I agree, and I see no convincing distinction between this case and *Mt. Hood*. There is no cause to look differently at administrative decisions that state the amount of improper rates and those that say which rates come within statutory proscriptions on preference and inequity.

There are no unusual circumstances here to preclude equitable tolling of the statutory limitation on tort claims. As appellant asserts, the facts of the case, including the amount of damages, can be readily determined at this time. I would decide that the statute of limitations was tolled and that partial summary judgment was improperly granted.