William J. HIGGINS, Plaintiff–
Appellant,

v.

NEW YORK STOCK EXCHANGE,
INC., Defendant–Appellee.

No. 1675, Docket 91–7196.

United States Court of Appeals,
Second Circuit.

Argued June 12, 1991.

Decided Aug. 26, 1991.

Robert Zicklin, New York City (Elliot L. Evans, Laventhall & Zicklin, of counsel), for plaintiff-appellant.

Russell E. Brooks, New York City (Charles Westland, Milbank, Tweed, Hadley & McCloy, of counsel), for defendant-appellee.

Before FEINBERG, NEWMAN and WINTER, Circuit Judges.

WINTER, Circuit Judge:

Appellant William J. Higgins, a member of the New York Stock Exchange ("Exchange") appeals from the district court's dismissal of his antitrust action against the Exchange as barred by the Clayton Act's statute of limitations. 755 F.Supp. 113. Appellant argues, first, that his antitrust cause of action accrued only after the Securities and Exchange Commission ("SEC") ruled on his federal securities law claim and, second, that his initiation of the administrative proceeding tolled the Clayton Act's statute of limitations. We reject the former argument on the ground the statute of limitations began to run on the date of the alleged antitrust injury. We reject the latter argument because appellant's decision to petition the SEC was not a jurisdictional prerequisite to filing his antitrust action.

## BACKGROUND

The Exchange operates a major international trading floor where securities are bought and sold. Higgins is an independent floor broker. As such, he is not employed by a member firm but rather handles overflow trades for various firms, receiving as compensation a small portion of the commission collected by the member firm.

The instant complaint alleges that in February 1981 Higgins sought permission from the Exchange to install an unrestricted business telephone line in his booth on the trading floor. Such an outside line

would have enabled Higgins to take trading orders from principals—*e.g.*, fund managers, investment advisors, financial institutions—and to compete directly with member firms for customers.

On June 4, 1982, the president and chief operating officer of the Exchange advised Higgins that his telephone installation request would be referred to the Exchange's management committee, but two years passed without what Higgins describes as a "definitive response." In June 1984, Higgins told the Exchange that he intended to take trading orders on the floor by portable telephone, whereupon the Exchange forbade him from doing so. Thereafter, in July 1984, Higgins asked the Exchange's board of directors to review management's portable-phone ruling and its refusal to permit the installation of a fixed business line. On March 7, 1985, the board of directors upheld both decisions.

On April 9, 1985, Higgins petitioned the SEC pursuant to Section 19(d) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78s(d) (1988), to set aside the Exchange's decisions. On February 7, 1986, the SEC ruled that it had jurisdiction "to review the determinations of the [Exchange] that [Higgins] ... be precluded from having on-floor, telephonic access to off-floor, non-member customers." SEC Release No. 22877 at 13. On May 6, 1987, reviewing whether the Exchange's actions were based on lawful rules and imposed no "burden on competition not necessary or appropriate in furtherance of the purposes of the [Exchange Act]," 15 U.S.C. § 78s(f), the SEC struck down both of the Exchange's restrictions. The SEC noted that the Exchange's refusal to file "a rule proposal ... expressly addressing this matter has denied [the SEC] the opportunity to review those concerns which led the Exchange to establish its [unwritten] telephone access policy, and evaluate, with the benefit of public comment, the important issues involved in the access issue." SEC Release No. 24429 at 15 n. 35.

Following the SEC's ruling, Higgins installed an unrestricted telephone line in his booth on the trading floor and began to cultivate outside business. He also began using a portable telephone until the Exchange enacted a formal rule approved by the SEC prohibiting the use of such phones on the trading floor.[1]

On June 15, 1990, more than five years after the Exchange's directors upheld management's denial of unrestricted telephone lines to the trading floor, Higgins filed the instant action seeking treble damages under the Clayton Act for anticompetitive conduct. The Exchange moved pursuant to Fed.R.Civ.P. 12(c) for judgment on the ground that the action was barred by the Clayton Act's four-year statute of limitations, and Judge Sweet dismissed the complaint. This appeal followed.

## DISCUSSION

Higgins's action was brought under Section 4 of the Clayton Act, 15 U.S.C. § 15(a) (1988), which provides, *inter alia*, that an action asserting anticompetitive conduct must be brought "within four years after the cause of action accrued." 15 U.S.C. § 15b (1988).

Higgins challenges the district court's dismissal of his complaint on two grounds. First, he argues that his antitrust action did not accrue until after the SEC had ruled on whether the Exchange's refusal to allow him to use an unrestricted telephone line was consistent with, or mandated by, federal securities law. Second, he asserts that the statutory limitations period was tolled during the pendency of those SEC proceedings. We address each argument in turn.

As a preliminary matter, we note that there is a dispute over whether appellant raised his time-of-accrual argument in the district court. Appellant asserted at oral argument that we should address the issue because it is the "mirror image" of an equitable tolling argument pressed below. We disagree. The equitable tolling argu-

---

1. Higgins unsuccessfully petitioned this court to overturn the SEC's upholding of the rule banning cordless phones. *Higgins v. Securities and Exchange Commission*, 866 F.2d 47 (2d Cir. 1989). Those proceedings do not affect the matter before us.

ment assumed that a valid claim under the Clayton Act arose in 1985 and concluded that a relaxation of the statutory time-bar was called for. The time-of-accrual argument, by contrast, assumes that Higgins's action could *not* have been brought in 1985 and that administrative adjudication of the Exchange's anticipated defense was a prerequisite to filing suit.

■ Based on the record below, however, we believe that Higgins has not waived the time-of-accrual argument. Although his equitable tolling point did not suffice to alert the district court to the time-of-accrual claim, Higgins also argued before the district court that his claim against the Exchange did not accrue until after he knew the exact amount of *damages* caused by the Exchange's decision. This argument, although different in emphasis from the point pressed on appeal, at least introduced the notion of a legal obstacle to filing suit. Consequently, we will address Higgins's time-of-accrual argument on the merits.

■ A cause of action for violation of the antitrust laws ordinarily accrues as soon as there is an injury to competition. In *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971), the Supreme Court held:

> Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business.... This much is plain from the treble damages statute itself.... In the context of a continuing conspiracy to violate the antitrust laws, ... this has usually been understood to mean that each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and that, as to those damages, the statute of limitations runs from the commission of the act.

*Id.* at 338, 91 S.Ct. at 806. The Court explained:

> [I]f a plaintiff feels the adverse impact of an antitrust conspiracy on a particular date, a cause of action immediately accrues to him to recover all damages in-

curred by that date and all provable damages that will flow in the future....

*Id.* at 339, 91 S.Ct. at 806. The only exception to the date-of-injury rule is the rare case in which the damages caused by an antitrust injury are so speculative that the court is unwilling to estimate them. *See id.; see also Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261, 270–71 (7th Cir.1984). Although Higgins argued below that this exception applies to the instant action, he wisely does not press this meritless issue on appeal.

■ Applying the date-of-injury rule, the latest possible date on which the Exchange acted to injure Higgins's business was March 7, 1985, when the Exchange's directors upheld management's refusal to permit an unrestricted telephone line on the trading floor. Even under the most generous assumptions, the limitations period expired on March 7, 1989, more than a full year before Higgins filed the instant action.

On appeal, Higgins seeks to push the accrual date forward by claiming that, before he could file an antitrust action, he needed to determine whether the Exchange's conduct was exempt from antitrust liability by virtue of federal securities regulations that either permitted or mandated the Exchange's actions. We disagree. Although the "antitrust laws do not come into play when they would prohibit an action that a regulatory scheme permits," *Finnegan v. Campeau Corp.*, 915 F.2d 824, 828 (2d Cir.1990) (citing *United States v. National Ass'n of Securities Dealers*, 422 U.S. 694, 95 S.Ct. 2427, 45 L.Ed.2d 486 (1975); *Gordon v. New York Stock Exchange*, 422 U.S. 659, 95 S.Ct. 2598, 45 L.Ed.2d 463 (1975); and *Silver v. New York Stock Exchange*, 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963)), there is no authority for holding that, before filing an antitrust complaint, a would-be antitrust plaintiff must disprove in an administrative proceeding each and every defense that might be interposed against his claim. Quite the contrary, the issue of whether conduct is immune from antitrust challenge is "a matter for the courts, and

in particular, for the courts in which the antitrust claims are raised." *Gordon v. New York Stock Exchange*, 422 U.S. at 686, 95 S.Ct. at 2613. In *Gordon*, where rules relating to commissions were challenged, the Supreme Court made an independent inquiry into the content and reasonableness of the regulatory scheme that impliedly revoked the antitrust laws. After considering the "statutory provision authorizing regulation," "long regulatory practices" and "continued congressional approval," the Court held that the rules were immune from antitrust challenge. *Gordon*, 422 U.S. at 691, 95 S.Ct. at 2615.

■ The federal courts, rather than the SEC, therefore, are the proper fora to resolve claims of immunity or other antitrust defenses where the pertinent regulatory schemes overlap. Although Section 19(d) of the Exchange Act, 15 U.S.C. § 78s(d), provides for SEC review of disciplinary and regulatory actions by self-regulating organizations such as the New York Stock Exchange, the Commission's determination of a securities law issue does not automatically establish the validity of a claim or defense under antitrust laws. Had the SEC ruled against Higgins, its ruling thus would not have disabled him from filing an antitrust action and from arguing that the SEC's construction of securities law should be disregarded because it imposes a "burden on competition not necessary or appropriate in furtherance of the purposes of the [Exchange Act]." 15 U.S.C. § 78s(f).

In sum, because Higgins's right to file an antitrust action did not turn on an SEC ruling regarding the effect of federal securities law, Higgins's antitrust claim accrued—and the statute of limitations began to run—as soon as the Exchange acted to injure his business. Based on the allegations in the complaint, we hold that Higgins's claim for relief accrued, therefore, no later than March 7, 1985.

■ We are no more impressed by Higgins's argument that the statute of limitations was tolled during the pendency of the SEC proceeding. Higgins argues that, once he initiated an administrative proceeding with the agency primarily responsible

for oversight of the Exchange, the statute of limitations was tolled. In support, he argues that the agency was determining an issue that likely would have been the subject of a special reference by the district court had an antitrust action already been filed.

This invocation of the doctrine of primary jurisdiction is misplaced, however. The only authority cited by Higgins for this rather novel view is *Mt. Hood v. Greyhound Corp.*, 616 F.2d 394 (9th Cir.1980), in which the Ninth Circuit held that the running of an antitrust statute of limitations was equitably tolled during the pendency of an administrative proceeding before the Interstate Commerce Commission ("ICC"), the agency with primary jurisdiction over certain issues pivotal to the question of antitrust immunity. The court allowed the antitrust action to be initiated long after the commencement of administrative proceedings and beyond the point at which the antitrust claim otherwise could have been brought. It did so on the ground that issues touching the antitrust immunity question were within the primary jurisdiction of the ICC and that "resolution of those issues by the Commission was required before a court could address the immunity question." *Id.* at 398.

Even within the Ninth Circuit, however, *Mt. Hood* is now regarded as at best a very narrow ruling, at worst a wholly anomalous decision. Subsequent cases have made clear that the equitable tolling theory of *Mt. Hood* applies only when resort to an agency is a jurisdictional prerequisite to seeking review in federal court, a very narrow class of cases in which the "plaintiff is required to avail himself of an alternative course of action as a precondition of filing suit." *Conley v. IBEW*, 810 F.2d 913, 915 (9th Cir.1987); *see also Harris v. Alumax Mill Prods., Inc.*, 897 F.2d 400 (9th Cir.1990); *Community Elec. Serv. v. National Elec. Contractors Ass'n*, 869 F.2d 1235, 1241 (9th Cir.1989). No such jurisdictional prerequisite exists in the instant matter.

More importantly, however, the doctrine of primary jurisdiction "ordinarily comes

into play *after* suit is filed and the statute of limitations is thus stopped from running." *Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261, 269 (7th Cir.1984). The statute of limitations is designed to "put the adversary on notice to defend within a specified period of time" and to "protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence." *United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979). The doctrine of primary jurisdiction, a practice of referring issues to an agency, threatens neither of these objectives. When a plaintiff files an antitrust action raising an issue that the court subsequently concludes must be referred to an agency, the defendant receives notice of an antitrust claim and may preserve evidence useful or essential to its defense. Any delay occasioned by the reference thus does not prejudice a defendant in the way a late-filed action might.

Higgins, however, would have us hold that a plaintiff may file an otherwise untimely antitrust complaint whenever a court might have arguably referred a preliminary issue to an agency before deciding the antitrust claim. He thus contends that parties may "toll" the limitations period at their own option by instituting administrative proceedings, thereby forcing defendants to defend otherwise untimely actions. We disagree. Such a rule would greatly prolong and delay litigation without any corresponding benefit. It would, moreover, create unnecessary and undesirable opportunities for the endless harassment of parties through serial litigation.

Accordingly, we affirm.