86 F.3d 8
 1996-1 Trade Cases P 71,424
 Fletcher J. JOHNSON, M.D.; Benjay Realty Corp., Plaintiffs-Appellants,
v.
NYACK HOSPITAL; Kenneth Steinglass, M.D.; Daniel Berson,
M.D.; Lawrence Simon, M.D.; James Dawson; Donald
Winikoff, M.D.; Greger Anderson; Rockland Thoracic
Associates, P.C., Defendants-Appellees.
 No. 1020, Docket 95-7762.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 21, 1996.
Decided June 3, 1996.
 
 1
 George R. Clark, Washington, D.C. (Annemarie Scanlon Harthun, Reed Smith Shaw & McClay, Washington D.C., Harry Frischer, Robert Frenchman, Solomon, Zauderer, Ellenhorn, Frischer & Sharp, New York City, on the brief), for plaintiffs-appellants.
 
 
 2
 Ronald S. Rauchberg, New York City (Francis D. Landrey, Patricia J. Clarke, Mark P. Monack, Proskauer Rose Goetz & Mendelsohn, New York City, on the brief), for defendants-appellees.
 
 
 3
 Before: NEWMAN, Chief Judge, KEARSE, Circuit Judge, and WEXLER,* District Judge.
 
 LEONARD D. WEXLER, District Judge:
 
 4
 Plaintiffs-appellants Fletcher J. Johnson, M.D. and Benjay Realty Corporation appeal from the partial judgment of the United States District Court for the Southern District of New York (Lewis A. Kaplan, Judge) dismissing on statute-of-limitations grounds antitrust claims asserted against defendants-appellees Nyack Hospital (the "Hospital") and certain members of its staff. This appeal raises the issue of whether a federal court's deferral to an agency of primary jurisdiction triggers an equitable tolling of the statute of limitations. Plaintiffs contend that the district court erred in refusing to toll the limitations period for the time between two separately filed actions. The first action was dismissed without prejudice so that plaintiffs could present medical aspects of their claims to an administrative agency with primary jurisdiction; the second was filed after the agency had rendered a decision. We find no reversible error because even if equitable tolling applies in the instant case, the doctrine's requirements have not been satisfied.
 
 I. BACKGROUND
 
 5
 The underlying facts are not in dispute. Dr. Johnson's privileges to perform thoracic and vascular surgery were revoked by the Hospital on February 10, 1987. Three years later, on February 7, 1990, plaintiffs filed a complaint in the Southern District, alleging that the Hospital conspired with other defendants to revoke Dr. Johnson's privileges and suppress competition in the thoracic and vascular surgery markets. The complaint did not seek restoration of privileges; it sought money damages and attorney's fees. On September 10, 1991, the district court (Robert W. Sweet, Judge) granted defendants' motion for summary judgment, dismissing the complaint without prejudice because plaintiffs failed to exhaust administrative remedies. Johnson v. Nyack Hosp., 773 F.Supp. 625, 631 (S.D.N.Y.1991), aff'd on other grounds, 964 F.2d 116 (2d Cir.1992) ("Johnson I "). This Court affirmed on May 11, 1992, relying not on exhaustion of remedies, but on the principle that plaintiffs' claims were within the primary jurisdiction of the New York State Public Health Council ("PHC"). This Court explained that "[b]ecause the PHC has the distinctive expertise to divine whether defendants had a legitimate medical reason for revoking Johnson's privileges, the PHC should make this determination before the district court considers the issue." Johnson I, 964 F.2d 116, 123 (2d Cir.1992).
 
 
 6
 Meanwhile, several months before our decision in Johnson I, the New York State Office of Professional Medical Conduct ("OPMC"), a body responsible for maintaining the integrity and competence of the medical profession in the state, brought charges against Dr. Johnson for professional misconduct. A hearing to determine whether Dr. Johnson's license to practice medicine should be revoked commenced on February 10, 1992 and ran for twenty-two days. On May 6, 1993, the OPMC rendered a decision, exonerating Dr. Johnson of nearly all charges. It finalized the prosecution on July 19, 1993 by issuing an addendum, which did not alter its earlier decision.
 
 
 7
 Only then, after the OPMC rendered a decision, did plaintiffs seek a ruling from the PHC. They filed a complaint with the PHC on August 9, 1993, nearly fifteen months after this Court's decision in Johnson I.
 
 
 8
 The PHC was unable to provide much guidance. In a one-page letter dated September 7, 1994, the PHC reported that it failed to reach a consensus on whether the Hospital was justified in revoking Dr. Johnson's privileges and that it would take no further action.
 
 
 9
 Five weeks later, on October 14, 1994, plaintiffs commenced the instant action. By order dated June 27, 1995, the district court granted defendants' motion for partial summary judgment and directed the Clerk of the Court to enter judgment, pursuant to Fed.R.Civ.P. 54(b), dismissing as time-barred the claims relating to the revocation of Dr. Johnson's surgical privileges. Johnson v. Nyack Hosp., 891 F.Supp. 155, 167 (S.D.N.Y.1995). Judgment was entered on July 5, 1995.
 
 II. DISCUSSION
 
 10
 This Court reviews de novo a district court's decision to grant summary judgment. Union Carbide Corp. v. Exxon Corp., 77 F.3d 677, 681 (2d Cir.1996). Summary judgment is appropriate only where there is "no genuine issue as to any material fact" and the moving party shows that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching a determination, this Court resolves all ambiguities and draws all reasonable inferences in favor of the non-moving party. Union Carbide, 77 F.3d at 681.
 
 
 11
 Section 4B of the Clayton Act provides that claims brought under the antitrust laws "shall be forever barred unless commenced within four years after the cause of action accrued." 15 U.S.C. § 15b (1994). An antitrust cause of action accrues as soon as there is injury to competition. See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971). Plaintiffs allege that revocation of Dr. Johnson's privileges caused immediate injury to competition in the thoracic and vascular surgery markets. Accordingly, the antitrust claims accrued on February 10, 1987, the date of revocation.
 
 
 12
 The claims on appeal were filed on October 14, 1994, long after the limitations period expired. In opposing defendants' motion for partial summary judgment, plaintiffs contended that the lateness should be excused. The doctrine of primary jurisdiction, they argued, commands equitable tolling of the statute of limitations. The district court disagreed, finding equitable tolling inapplicable, and, in any event, that its requirements were not satisfied because plaintiffs had not proceeded with reasonable diligence during the period they sought to have tolled. 891 F.Supp. at 161. On appeal, plaintiffs pursue the same contention.
 
 
 13
 The doctrine of primary jurisdiction applies where a claim, though "originally cognizable in the courts," is better suited for a specialized administrative body. United States v. Western Pac. R.R., 352 U.S. 59, 63-64, 77 S.Ct. 161, 164-65, 1 L.Ed.2d 126 (1956). Under the doctrine, a court defers to the agency for advisory findings and either stays the pending action or dismisses it without prejudice. Reiter v. Cooper, 507 U.S. 258, 268-69, 113 S.Ct. 1213, 1220-21, 122 L.Ed.2d 604 (1993). In doing so, the court must take care that its deferral not unfairly disadvantage either party. Id. The paramount concern is that the deferral not work a time-bar to claims that will in all likelihood be refiled in federal court after the agency acts.
 
 
 14
 The statute of limitations is not a concern where the deferring court has issued a stay--the action is simply reactivated, if necessary, after the administrative proceeding runs its course. See American Tel. & Tel. Co. v. Delta Communications Corp., 590 F.2d 100, 102 (5th Cir.) (per curiam) (vacating without-prejudice dismissal and remanding with instructions for district court to stay counterclaims within primary jurisdiction of Federal Communications Commission because dismissal might unfairly prejudice defendant), cert. denied, 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1979). But where the action has been dismissed without prejudice, a plaintiff's subsequent court filing is vulnerable to a time-bar because the dismissal in and of itself does not halt the running of the limitations period, even though designated to be without prejudice. See Jewell v. County of Nassau, 917 F.2d 738, 740-41 (2d Cir.1990) (per curiam); Gannett Co. v. Register Publishing Co., 428 F.Supp. 818, 835 (D.Conn.1977) ("without prejudice" does not mean that "[t]ime ... stands still"). Thus, to ensure that unfair prejudice does not result from a deferring court's without-prejudice dismissal, courts have protected a plaintiff's rights with the doctrine of equitable tolling, which provides a plaintiff with "just so much extra time as he needs, despite all due diligence on his part," to traverse court-imposed administrative hurdles and file a new federal claim. Heck v. Humphrey, 997 F.2d 355, 357-58 (7th Cir.1993) (emphasis omitted), aff'd on other grounds, --- U.S. ----, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).
 
 
 15
 This Court has not expressed a preference between judicial stay, on the one hand, and the combination of dismissal without prejudice and equitable tolling, on the other. Indeed, this Court has yet to decide whether equitable tolling even applies in a primary jurisdiction case. Although in Jewell we stated that a judicial stay was the "only means by which the bar of limitations may be avoided," equitable tolling was unavailable in that case because there was no indication that application of the state statute of limitations would frustrate the policy underlying the federal cause of action. See 917 F.2d at 740-41 (civil rights action in which federal court borrowed state's statute of limitations and tolling rules, and no tolling rule applied). By contrast, the Seventh Circuit has expressed a preference for dismissal coupled with equitable tolling. Heck, 997 F.2d at 357-58. That circuit finds equitable tolling's implicit requirement that a party proceed with reasonable diligence during the period it seeks to have tolled a useful means by which a court can monitor a party's speed through the administrative level--a mechanism not necessarily available in cases that have been stayed. Id.
 
 
 16
 Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances. Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258, 264 (2d Cir.1990). This Court has applied the doctrine "as a matter of fairness" where a plaintiff has been "prevented in some extraordinary way from exercising his rights, or h[as] asserted his rights in the wrong forum." Miller v. International Tel. & Tel. Corp., 755 F.2d 20, 24 (2d Cir.), cert. denied, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985). This Court has also recognized the applicability of equitable tolling where "resort to an agency is a jurisdictional prerequisite to seeking review in federal court." Higgins v. New York Stock Exch., Inc., 942 F.2d 829, 833 (2d Cir.1991) (citing Harris v. Alumax Mill Prods., Inc., 897 F.2d 400, 404 (9th Cir.), cert. denied, 498 U.S. 835, 111 S.Ct. 102, 112 L.Ed.2d 73 (1990), Community Elec. Serv. v. National Elec. Contractors Ass'n., 869 F.2d 1235, 1241 (9th Cir.), cert. denied, 493 U.S. 891, 110 S.Ct. 236, 107 L.Ed.2d 187 (1989), overruled on other grounds by Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1363 (9th Cir.1990) (en banc), and Conley v. IBEW, 810 F.2d 913, 915 (9th Cir.1987)); see Grimmett v. Brown, 75 F.3d 506, 515 (9th Cir.1996). In Higgins, this Court held that the doctrine could not be used to exclude time a plaintiff chose to spend at the administrative level, by his own discretion, before filing a federal claim. 942 F.2d at 833. The decision in that case, however, did not resolve whether equitable tolling applies in cases where deferral to an agency's primary jurisdiction is mandated by the court and accomplished by dismissal without prejudice.
 
 
 17
 Plaintiffs urge us to answer in the affirmative now and apply the doctrine in the instant case. They argue that equitable tolling was triggered in Johnson I by the combination of the dismissal without prejudice and this Court's directive that Dr. Johnson "resort to the PHC before seeking redress in federal court." See 964 F.2d at 121-22. We see no reason to doubt their logic. But equitable tolling does not help plaintiffs here. Even if equitable tolling applies, the doctrine's requirements have not been satisfied.
 
 
 18
 Equitable tolling requires a party to pass with reasonable diligence through the period it seeks to have tolled. See Dodds v. Cigna Secs., Inc., 12 F.3d 346, 350 (2d Cir.1993) (equitable tolling will stay running of statutory period "only so long as the plaintiff has exercised reasonable care and diligence" (internal quotation marks omitted)), cert. denied, --- U.S.----, 114 S.Ct. 1401, 128 L.Ed.2d 74 (1994); Bowers, 901 F.2d at 264 (equitable tolling not satisfied in the absence of "affirmative action on the part of [plaintiff] to preserve its right"); accord Singletary v. Continental Illinois Nat'l Bank & Trust Co., 9 F.3d 1236, 1241 (7th Cir.1993) (equitable tolling "permits a plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before"). In May 1992, this Court directed plaintiffs to proceed to the PHC. Plaintiffs did not file a complaint with the PHC until August 1993, fifteen months later, and did not return to federal court until October 1994, twenty-nine months later. This delay was excessive and occasioned by plaintiffs' lack of diligence. A reasonable plaintiff would have returned to federal court sooner.
 
 
 19
 Nonetheless, plaintiffs contend that their fifteen-month delay in filing with the PHC was justified. They explain that they were compelled to delay filing with the PHC until the OPMC resolved the professional misconduct charges asserted against Dr. Johnson. They had to wait, the argument goes, because the PHC alone could not "serve the purpose expected by this Court." See Brief for Plaintiffs-Appellants, at 24-25. This Court, however, did not in Johnson I give plaintiffs the option to pick the OPMC or any other agency that plaintiffs thought would develop the best record. The only agency mentioned in this Court's decision was the PHC, and the direction to pursue claims before that body was clear. Even if plaintiffs were correct, and the OPMC's record would have been more useful than the PHC's, we see no reason why plaintiffs could not have filed with the PHC immediately and allowed the proceedings there to run concurrent to those at the OPMC. The district court held that plaintiffs' delay was inexcusable and that plaintiffs' failure to resort to the PHC with reasonable diligence foreclosed access to equitable tolling. 891 F.Supp. at 161. We agree.
 
 
 20
 Though plaintiffs might find the result harsh, the "harshness ... is largely 'a self-inflicted wound.' " ILGWU Nat'l Retirement Fund v. Levy Bros. Frocks, Inc., 846 F.2d 879, 887 (2d Cir.1988) (quoting IUE AFL-CIO Pension Fund v. Barker & Williamson, 788 F.2d 118, 129 (3d Cir.1986)).
 
 III. CONCLUSION
 
 21
 The district court correctly determined that plaintiffs' antitrust claims relating to the 1987 revocation of Dr. Johnson's surgical privileges were time-barred. Accordingly, the judgment of the district court is affirmed.
 
 
 
 *
 Honorable Leonard D. Wexler, of the United States District Court for the Eastern District of New York, sitting by designation