25-1307-cv
*Chalmers, et al. v. National Collegiate Athletic Association, et al.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**<u>SUMMARY ORDER</u>**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of December, two thousand twenty-five.

PRESENT:      GUIDO CALABRESI,
                 GERARD E. LYNCH,
                 SARAH A. L. MERRIAM,
                     *Circuit Judges*.

_____

MARIO CHALMERS, SHERRON COLLINS, JASON TERRY, RYAN BOATRIGHT, DEANDRE DANIELS, ALEX ORIAKHI, VINCENT COUNCIL, MATT PRESSEY, ROSCOE SMITH, EUGENE EDGERSON, AARON BRAMLETT, JASON STEWART, GERARD COLEMAN, JUSTIN GREENE, RON GIPLAYE, JAMES CUNNINGHAM, individually and on behalf of themselves and all others similarly situated,

         *Plaintiffs-Appellants*,

         v.                                           25-1307-cv

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION a/k/a NCAA; BIG EAST
CONFERENCE, INC.; PAC-12
CONFERENCE; BIG TEN CONFERENCE,
INC.; BIG TWELVE CONFERENCE, INC.;
SOUTHEASTERN CONFERENCE;
ATLANTIC COAST CONFERENCE,

    *Defendants-Appellees*,

TURNER SPORTS INTERACTIVE, INC.,

    *Defendant.*[1]

_____

FOR PLAINTIFFS-APPELLANTS:    ELLIOT ABRAMS, Cheshire Parker Schneider PLLC, Raleigh, NC (Scott C. Harris, Martha A. Geer, Mark E. Silvey, Milberg, Coleman, Bryson, Phillips, Grossman, PLLC, Raleigh, NC, *on the brief*).

FOR DEFENDANTS-APPELLEES:    RAKESH N. KILARU (Daniel Epps, Matthew Skanchy, *on the brief*), Wilkinson Stekloff LLP, Washington, DC, *for Defendant-Appellee National Collegiate Athletic Association*.

Kyle A. Casazza, Justin B. Cohen, Proskauer Rose LLP, Los Angeles, CA, *for Defendant-Appellee Big East Conference, Inc*.

Whitty Somvichian, Cooley LLP, San Francisco, CA; Ashley K. Corkery, Cooley LLP, Palo Alto, CA, *for Defendant-Appellee Pac-12 Conference*.

Britt M. Miller, Mayer Brown LLP, Chicago, IL, *for Defendant-Appellee Big Ten Conference, Inc*.

Natali Wyson, Chelsea A. Priest, Sidley Austin LLP, Dallas, TX; Benjamin R. Nagin, Sidley

_____

[1] The Clerk of Court is respectfully directed to amend the caption as reflected above.

2

Austin LLP, New York, NY, *for Defendant-Appellee Big Twelve Conference, Inc.*

Michael S. Sommer, Wilson Sonsini Goodrich & Rosati, New York, NY, *for Defendant-Appellee Southeastern Conference.*

Christopher S. Yates, Latham & Watkins LLP, San Francisco, CA, *for Defendant-Appellee Atlantic Coast Conference.*

Appeal from the April 28, 2025, judgment of the United States District Court for the Southern District of New York (Engelmayer, *J.*).

**UPON DUE CONSIDERATION,** the judgment of the District Court is **AFFIRMED**.

The sixteen named plaintiffs-appellants in this putative class action played men's college basketball at universities affiliated with the National Collegiate Athletic Association ("NCAA") during years ranging from 1994 to 2015.  They bring this suit against the NCAA and six of its member conferences.  The putative class includes "[a]ll individual persons who were NCAA student-athletes prior to June 15, 2016, whose image, likeness, or footage has been used or licensed for commercial purposes by the NCAA, the Conferences," or their affiliates.  App'x at 76 ¶153.

Plaintiffs initiated this action on July 1, 2024, and filed the operative Amended Complaint on November 14, 2024, alleging that defendants conspired to violate the Sherman Act and were unjustly enriched through commercial use of plaintiffs' names, images, and likenesses ("NIL").  The claims asserted are: (1) unreasonable restraint of trade, in violation of Section 1 of the Sherman Act, 15 U.S.C. §1; (2) unreasonable

3

restraint of trade through group boycott or refusal to deal, in violation of Section 1 of the Sherman Act, 15 U.S.C. §1; (3) monopolization, in violation of Section 2 of the Sherman Act, 15 U.S.C. §2; and (4) common law unjust enrichment.

Defendants moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). The District Court granted the motion and dismissed the Amended Complaint with prejudice. *See Chalmers v. NCAA*, No. 1:24CV05008(PAE), 2025 WL 1225168, at \*17 (S.D.N.Y. Apr. 28, 2025). First, the District Court held that plaintiffs' Sherman Act claims were barred by the four-year statute of limitations under 15 U.S.C. §15b and were not subject to equitable tolling. *See id.* at \*7-13. Second, it concluded that plaintiffs' claims for injunctive relief were barred by the doctrine of laches. *See id.* at \*13. Third, the District Court concluded that, "independently, doctrines of preclusion bar much of the [Amended Complaint's] claims" based on the resolution of similar class actions in the Northern District of California. *Id.*[2] Fourth, the District Court dismissed the unjust enrichment claim because it duplicated the antitrust claims; it was untimely; and, for ten of the plaintiffs, the claim was "foreclosed by the *Alston* Settlement Agreement and principles of claim preclusion." *Id.* at \*17.

On appeal, plaintiffs challenge each of these conclusions. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

---

[2] Those were the judgment in *O'Bannon v. NCAA*, 7 F. Supp. 3d 955 (N.D. Cal. 2014), *aff'd in part and vacated in part*, 802 F.3d 1049 (9th Cir. 2015), and a settlement agreement in *In re: NCAA Athletic Grant-in-Aid Cap Antitrust Litigation* ("*Alston*"), No. 4:14MD02541(CW), Doc. #746 (N.D. Cal. Dec. 6, 2017).

## BACKGROUND

The following facts are taken from the operative Amended Complaint. "At this stage of the proceedings, we accept all factual allegations as true and draw every reasonable inference from those facts in the plaintiff's favor." *Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC*, 156 F.4th 68, 75 (2d Cir. 2025) (citation modified). Plaintiffs claim that defendants used unfair and anticompetitive market power to force them, while they were in college, to sign agreements permitting defendants to use their NIL without further benefit or compensation to plaintiffs.

At some unknown time, but no later than the 1980s, defendants "enter[ed] into an anticompetitive agreement to unreasonably restrain interstate commerce and trade by suppressing and eliminating competition in the relevant market, which is the supply market for images and footage of student-athletes' past athletic performances." App'x at 37-38 ¶48 (emphasis omitted). Specifically, defendants "agreed not to pay any compensation to student-athletes for their work in connection with the creation of images and footage of the athletes' athletic performance[s], as well as to not recognize any ownership claims by the student-athletes in such images and footage"; "agreed to prohibit student-athletes from receiving any compensation for images and footage of their athletic performances"; and "agreed to usurp all ownership rights of such images and footage and to continually and repeatedly use such images and footage of student-athletes and their athletic performances for the sole commercial benefit of the conspirators." App'x at 38 ¶49.

To achieve the goals of the conspiracy, defendants required student-athletes,

5

including plaintiffs, "to sign a form titled 'Student-Athlete Statement' each academic year before their athletic season beg[an]," as set forth in NCAA Bylaw 14.1.3.1. App'x at 67 ¶120.[3] "According to the bylaws, 'Failure to complete and sign the statement shall result in the student-athlete's ineligibility for participation in all intercollegiate competition.'" App'x at 68 ¶122. Consistent with the proposed defined class, we assume that the *latest* possible date that any plaintiff signed one of these Statements was June 14, 2016. *See* App'x at 76 ¶153.

One typical version of the form "included a requirement that the student-athlete agree to the following statement":

> You authorize the NCAA [or a third party acting on behalf of the NCAA] to use your name or picture to generally promote NCAA championships or other NCAA events, activities or programs.

App'x at 68 ¶123 (alteration in original).[4] "The NCAA has interpreted this seemingly simple statement . . . to confer a license in perpetuity for the use of images and likenesses created during the athlete's collegiate career." App'x at 68 ¶124. Plaintiffs allege that the assignments of rights conferred by the Statements "are the product of coercion, represent an instrument of illegal conduct, and are otherwise against public policy," and, thus, the

---

[3] The NCAA Bylaws, which defendants voted on and passed each year, contained "a new set of rules to which all of the competitors for student-athlete services each agree[d] to adhere," including "restrictions prohibiting the payment of student-athletes." App'x at 60 ¶¶95-96. The NCAA's rules regarding student-athlete compensation have changed in recent years. *See NCAA v. Alston*, 594 U.S. 69, 77-79 (2021). We focus on the bylaws that plaintiffs allege were in force at the time plaintiffs were enrolled in NCAA-affiliated universities. *See* App'x at 66 n.5.

[4] "[T]he Student-Athlete Statements signed by [P]laintiffs included this provision or one substantially similar to it." App'x at 68 ¶123.

"assignments, to the extent they exist, are legally invalid and void." App'x at 70 ¶130.

"Each year, the NCAA and its members agree to claim exclusive ownership of all images and footage of student-athletes' athletic performances, as well as exclusive ownership of the copyrights to such images and footage." App'x at 43 ¶62. "As a result, the NCAA and its members obtain[ed] and maintain monopoly power in the relevant market." App'x at 43 ¶63. Plaintiffs allege that defendants profited from the commercial use of plaintiffs' NIL:

> [I]n reliance on the illegal usurpation of the student-athletes' rights, the NCAA, the conferences, and the NCAA's members continually and repeatedly use images and footage of the student-athletes for advertising and other commercial footage without compensating the student-athletes, thereby achieving the goals of generating additional profit and retaining all profit from the commercial use of the footage and images of the student-athletes and their performances.

App'x at 43 ¶64. Defendants have also "each entered into various media rights deals that . . . include value for the licensing of footage of former student-athletes, including Plaintiffs and the putative class members." App'x at 57 ¶83.

## DISCUSSION

### A.  Standard of Review

"We review *de novo* the district court's grant of [a] motion to dismiss." *Xeriant, Inc. v. Auctus Fund LLC*, 141 F.4th 405, 411 (2d Cir. 2025). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sonterra Cap. Master Fund, Ltd. v. UBS AG*, 152 F.4th 404, 409 (2d Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises a

7

statutory bar, such as lack of timeliness, as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015) (citation modified).

### B. Sherman Act Allegations[5]

Plaintiffs' Sherman Act claims are subject to a four-year statute of limitations: "Any action to enforce any cause of action under [15 U.S.C. §§15, 15a, or 15c] shall be forever barred unless commenced within four years after the cause of action accrued." 15 U.S.C. §15b. "A cause of action for violation of the antitrust laws ordinarily accrues as soon as there is an injury to competition." *Higgins v. N.Y. Stock Exch., Inc.*, 942 F.2d 829, 832 (2d Cir. 1991); *see also Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338 (1971). It is undisputed that plaintiffs filed their lawsuit on July 1, 2024, which is more than four years after June 14, 2016, the last day any putative class member was enrolled in an NCAA-affiliated university. Despite this, plaintiffs contend that their antitrust claims for damages are not time-barred, on three independent grounds. We address each in turn.

---

[5] Plaintiffs asserted their claims under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §1 and §2, respectively. Section 4 of the Clayton Act, 15 U.S.C. §15, "provides for a private right of action and treble damages to '[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws.'" *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 114 (2d Cir. 2021) (alteration in original) (quoting 15 U.S.C. §15(a)); *see also Kruman v. Christie's Int'l PLC*, 284 F.3d 384, 397-98 (2d Cir. 2002), *abrogated on other grounds by F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155 (2004) ("A plaintiff's injury, whether actual or threatened, is relevant to the Clayton Act, which gives a plaintiff the right to bring suit, and not the Sherman Act, which sets forth substantive rules governing conduct.").

### 1. Continuing Violation Doctrine

Plaintiffs argue that under the continuing violation doctrine, the limitations period restarts each time defendants use their NIL for commercial purposes. The continuing violation doctrine "provides that the statute of limitations does not only run from a defendant's initial act – for example, the execution of an anticompetitive contract – if the defendant engages in conduct which constitutes a continuing violation of the Sherman Act and which inflicts continuing and accumulating harm." *U.S. Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 67 (2d Cir. 2019) (citation modified); *see also Zenith Radio*, 401 U.S. at 338-39. In such a case, "each overt act *that is part of the violation* and that injures the plaintiff . . . starts the statutory period running again." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997) (emphasis added) (citation modified). "But the commission of a separate new overt act generally does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period." *Id.* "An overt act that restarts the statute of limitations is characterized by two elements: (1) it must be a new and independent act that is not merely a reaffirmation of a previous act; and (2) it must inflict new and accumulating injury on the plaintiff." *U.S. Airways*, 938 F.3d at 68 (citation modified).

Plaintiffs allege that defendants engaged in anticompetitive conduct when they agreed to require (and did require) plaintiffs to sign the Student-Athlete Statements each academic year. By coercing plaintiffs to sign away their NIL rights without compensation, defendants allegedly carried out a conspiracy to, among other things, "prohibit student-athletes from receiving any compensation for images and footage of

9

their athletic performances" and "usurp all ownership rights of such images and footage and to continually and repeatedly use such images and footage." App'x at 38 ¶49. That is the anticompetitive conduct that gives rise to the Sherman Act claims: the transfer from plaintiffs to defendants of all rights to their NIL, and to any and all profits therefrom. That is the conduct that plaintiffs contend "stripped them of their legal rights." App'x at 75 ¶149. And that conduct ended, at the very latest, in June 2016. Each commercial use of plaintiffs' NIL – including the NCAA's entry into commercial licensing agreements and discrete acts of advertising – is "a manifestation of the 'overt act,' the decision to enter the contract, rather than an independent overt act of its own." *U.S. Airways*, 938 F.3d at 69; *see also SL-X IP S.á.r.l. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, Nos. 21-2697, 21-2699, 2023 WL 2620041, at *3 (2d Cir. Mar. 24, 2023) (summary order) (finding the continuing violation doctrine inapplicable where a later act "was merely a manifestation of Defendants' alleged prior" anticompetitive conduct (citation modified)). Accordingly, we conclude that the continuing violation doctrine does not apply.

### 2. Speculative Damages

Plaintiffs next contend that this is "the rare case in which the damages caused by an antitrust injury [we]re so speculative that [a]court [would have been] unwilling to estimate them" had they sued earlier, thus giving rise to an "exception to the date-of-injury rule" for accrual of antitrust claims. *Higgins*, 942 F.2d at 832. "[I]n such a case, a claim for the injuries that had been speculative would accrue when those injuries occurred, even though the act that caused them had taken place more than four years earlier." *Klehr*, 521 U.S. at 191.

10

But the damages caused by defendants' anticompetitive act – forcing plaintiffs to sign the Student-Athlete Statements – were not so "speculative" or "unprovable" at the time of that act as to support application of this exception. *Zenith Radio*, 401 U.S. at 339. Plaintiffs allege that defendants forced them to give up their NIL rights, which barred them from "receiv[ing] royalties or other compensation for the ongoing advertising and other commercial use of the images and footage featuring them and their athletic performances." App'x at 24 ¶6. Defendants likewise excluded plaintiffs from "the market for [the] supply of images and footage of" their own performances. App'x at 39 ¶50. "Exclusion from a market is a conventional form of antitrust injury that gives rise to a claim for damages as soon as the exclusion occurs . . . even though, in the nature of things, the victim's losses lie mostly in the future." *Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261, 271 (7th Cir. 1984).

The injury to plaintiffs caused by the loss of their rights to compete in the market for their own NIL was calculable when they signed the Student-Athlete Statements. Their NIL had a value at that time, and that value was not unprovable. Indeed, plaintiffs expressly allege that the NCAA made commercial use of their NIL, at least as to some of the plaintiffs, while they were still in college. For instance, they allege that the NCAA used plaintiff Boatright's NIL for commercial purposes "[e]ach day from on or about April 7, 2014, through the present." App'x at 48 ¶72; *see also*, *e.g.*, App'x at 49 ¶73 (allegation that NCAA used Oriakhi's NIL beginning in 2013); App'x at 50 ¶74 (allegation that NCAA used Council's NIL beginning in 2012).

It may be true, as plaintiffs argue, that the current "markets and monetization

11

structures" for NIL "were not foreseeable at the time they signed" the Statements. Appellants' Br. at 23. But "the statute of limitations is not tolled simply in order to wait and see just how well the defendant does in the market from which he excluded the plaintiff. Otherwise it would be tolled indefinitely in a very large class of antitrust suits." *Brunswick*, 752 F.2d at 271. It is not enough that the value of plaintiffs' NIL may be higher today than they might have expected it to be when they surrendered it to defendants. While plaintiffs' damages may have been "uncertain," they were *calculable* within four years of the signing of the Statements. *SL-x IP S.à.r.l.*, 2023 WL 2620041, at *3. This exception to the accrual rule therefore does not render plaintiffs' Sherman Act claims timely.

### 3. Equitable Tolling

Finally, plaintiffs argue that the limitations period is subject to equitable tolling. "As with other statutes of limitations, the Sherman Act's four-year time bar can be equitably tolled only in rare and exceptional circumstances." *Phhhoto Inc. v. Meta Platforms, Inc.*, 123 F.4th 592, 603 (2d Cir. 2024) (citation modified). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011) (citation modified).

Plaintiffs have failed to allege that extraordinary circumstances prevented them from suing during the limitations period. *See Watson v. United States*, 865 F.3d 123, 132 (2d Cir. 2017). Neither plaintiffs' ages at the time they were in college nor the fact that

12

the NCAA defended its NIL policies for years is extraordinary. *See id.* at 133 ("Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." (citation modified)).

Furthermore, plaintiffs have failed to allege that they diligently pursued their rights. This failing is especially apparent in light of the widely publicized class action lawsuits asserting similar claims against the NCAA filed years before plaintiffs filed this action. *Cf. Bennett v. U.S. Lines*, 64 F.3d 62, 66 (2d Cir. 1995) (holding that equitable tolling did not apply especially where at least four other complaints making similar allegations were filed against the defendant). Plaintiffs have failed to meet their burden; they have not shown "that it would have been impossible for a reasonably prudent person to learn" about the cause of action. *Pearl v. City of Long Beach*, 296 F.3d 76, 85 (2d Cir. 2002) (citation modified).

Accordingly, plaintiffs' Sherman Act claims seeking damages are time-barred, and dismissal was appropriate.

## C.    Injunctive Relief

The District Court concluded that although the statute of limitations does not bar plaintiffs' claims for injunctive relief, "the doctrine of laches here is fatal to plaintiffs' claims." *Chalmers*, 2025 WL 1225168, at *13. Plaintiffs contend that this conclusion was error because "the Complaint contains no allegations suggesting undue delay or prejudice." Appellants' Br. at 33.

"Laches is an equitable defense . . . [that] bars a plaintiff's equitable claim where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the

13

defendant." *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 259 (2d Cir. 1997) (citation modified). "Although laches is an equitable defense, employed instead of a statutory time-bar, analogous statutes of limitation remain an important determinant in the application of a laches defense." *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996). "[O]nce the analogous statute has run, a presumption of laches will apply and plaintiff must show why the laches defense ought not be applied in the case." *Id.* The District Court concluded – and plaintiffs do not contest – that the Clayton Act provides the analogous statute of limitations, which is four years. *See Chalmers*, 2025 WL 1225168, at *13. Like plaintiffs' damages claims for Sherman Act violations, plaintiffs' claims for injunctive relief accrued more than four years before they sued. The presumption of laches thus applies. *See Conopco, Inc.*, 95 F.3d at 191.

Plaintiffs have not overcome that presumption. Their arguments that "the NCAA maintained an environment in which athletes were formally barred from hiring counsel or negotiating the use of their NILs," Appellants' Br. at 33, and that "practical legal impediments to bringing this suit were not lifted until the Supreme Court's decision in *NCAA v. Alston*," Appellants' Br. at 33-34, are unpersuasive. As the District Court observed, "although plaintiffs in antitrust suits that significantly paralleled this one (and indeed included plaintiffs common to this action) brought claims against the NCAA years ago, the plaintiffs here sat on their hands for more than a decade before bringing this lawsuit." *Chalmers*, 2025 WL 1225168, at *13. Accordingly, we conclude that plaintiffs' claims for injunctive relief are barred by laches.

14

### D.      Unjust Enrichment

Plaintiffs argue that the District Court erred in dismissing their common law claim for unjust enrichment.[6]  Again, we disagree.

"In order to succeed on a claim for unjust enrichment under New York law, a plaintiff must prove that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover."  *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011) (citation modified).  But "unjust enrichment is not a catchall cause of action to be used when others fail."  *Corsello v. Verizon N.Y.*, 18 N.Y.3d 777, 790 (2012).  Instead, "[i]t is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."  *Id.*; *see also E.J. Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441, 456 n.7 (2018) ("As a *cause of action . . .* unjust enrichment simply refers to liability imposed on a defendant who has been enriched apart from a breach of an independent legal duty.").  Applying New York law, we have held that unjust enrichment claims were barred where they were duplicative of statutory claims.  *See, e.g.*, *Koenigsberg v. Bd. of Tr. of Columbia Univ. in the City of N.Y.*, No. 24-1519, 2025 WL 1540252, at *3 (2d Cir. May 30, 2025) (summary order) (affirming the

---

[6] The District Court applied New York law to this claim, observing that the parties "cited to New York law, and neither party has argued that the motion to dismiss turns on a proposition of law on which New York law differs from that of other states." *Chalmers*, 2025 WL 1225168, at *16 n.9.  On appeal, the parties again assume New York law applies.  We therefore do the same.

dismissal of an unjust enrichment claim as duplicative of statutory claims under New York law "where Appellants based their statutory claims on the same facts underlying the unjust enrichment claim").

Here, plaintiffs' unjust enrichment claim is duplicative of their federal antitrust claims. *See Corsello*, 18 N.Y.3d at 790-91. It "arises from the same facts and seeks the same damages." *Emic Corp. v Barenblatt*, 208 N.Y.S.3d 180, 182 (N.Y. App. Div. 1st Dept. 2024).[7] As a result, the District Court correctly dismissed it.

We have considered the parties' remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the District Court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[7] Contrary to plaintiffs' argument, that a constructive trust is a remedy uniquely available for unjust enrichment claims does not alter the analysis; if it did, *every* otherwise-duplicative unjust enrichment claim would be saved on that basis. And in any event, to the extent plaintiffs now attempt to assert an independent claim for a constructive trust under New York law, any such claim would be time-barred. *See*, *e.g.*, *Mattera v. Mattera*, 509 N.Y.S.2d 831, 833 (N.Y. App. Div. 2d Dept. 1986) (holding that the six-year limitations period for constructive trust ran from the date the plaintiff was fraudulently induced into signing a transfer of property). "An equitable remedy, such as the imposition of a constructive trust . . . , is not available to enforce a legal right that is itself barred by the statute of limitations." *In re Estate of Thomas*, 1 N.Y.S.3d 598, 603 (N.Y. App. Div. 4th Dept. 2015) (citation modified).